State vs. Taylor.

## No. 5762.

STATE OF LOUISIANA VS. RICHARD TAYLOR.

This suit was instituted by the Attorney General to annul the lease of the New Canal and appurtenances, parish of Orleans, made to Richard Taylor in 1866, for fifteen years, and recover the unpaid rent, on the ground that the lessee has failed to comply with the terms of the lease. The answer of defendant contains general and special denials and the averment that all his obligations in the premises arise under his contract with the State, as modified and amended by the statutes of 1867 and 1870, and as interpreted by the Legislature of the State.

In the suit of Charles Case, Receiver, vs. Richard Taylor, the State intervened, alleging that the rights of said Taylor under said notarial act of lease of fifth of March, 1866, no longer existed as therein provided, but have been materially modified and altered by the act No. 118 of 1867 and No. 82 of 1870, and asserting the binding force and operation of said acts to protect the rights of the State in relation to the said canal, etc., and succeeded in her demand. Having deliberately and solemnly invoked the statutes when she considered them essential to the protection and preservation of her rights under the contracts with the defendant now in question, she is estopped from assailing them or denying their validity when she may think her interests as to the same rights may require it.

The State is bound by her judicial pleadings and admissions, the same as private persons, and is entitled to no greater right or immunity as a litigant than they are. The doctrine of estoppel applies to the State just as it does to individuals. The plea in this respect is not *res adjudicata*, but estoppel, and should have been maintained; and consequently the State can not be heard in this action to deny the constitutionality of these two statutes, the validity and benefits of which she has heretofore invoked.

As to the exception of there being no cause of action, this plea is not identical with nor does it involve that of inconsistent and contradictory allegations, or that of vague and insufficient allegations. A cause of action is set out in the petition, although the charges may be vague and inconsistent.

From the tenor of the statutes and contracts and the indefinite stipulation in relation to the extension of the wharves to Claiborne street, and especially the fact that it was to depend on the demands of commerce, and is not a specific, fixed condition as to time, this court can not justly hold the failure, as yet, to construct some nine hundred feet of new wharves on each side of the canal, such a material part of the contract of lease as to be a cause under the circumstances to annul the contract at this time. The obligation still exists to construct the wharves whenever the trade requires it: and the State or those interested can demand their construction on such contingency.

The act No. 118 of 1867 required three large basins with wharves around them; act No. 82 of 1870 enacts that in lieu and instead of the three basins heretofore provided for by existing law, the lessee of the New Canal is hereby required and directed to dig and construct sixteen basins, each not less than two hundred feet in length, with a width of one hundred and fifty feet, measured from the west bank of said canal.

The engineers appointed by the court *a qua* to examine the canal and report its measurement, condition, etc., found only nine basins, but their aggregate dimensions equal those of the sixteen prescribed by the statute, and as facilities of that description needful to commerce were the object, and as the amount of such facilities designated by the statutes has been furnished, and it is not pretended that commerce is suffering or impeded, this court doubts whether there is good ground for annulling the lease, simply because the basins have not been kept separate and distinct from each other. It can not be seen that the State or the interests of commerce have been injured or the spirit of the contract violated in a material part in this respect.

Under the circumstances of the case as appearing in the record before this court the conclusion is that the lessee is sufficiently protected against the annulment of his lease in this suit.

State vs. Taylor.

APPEAL from the Superior District Court, parish of Orleans. *Haw-kins*, J. Jury trial. *A. P. Field*, Attorney General, *J. B. Cotton*, and *J. Q. A. Fellows*, for plaintiff and appellant. *Kennard, Howe & Prentiss* and *William H. Hunt*, for defendant and appellee.

HOWELL, J. This suit was instituted by the Attorney General in August, 1873, to annul the lease to Richard Taylor of the New Canal and appurtenances in 1866, for fifteen years, and recover the unpaid rent, on the ground that the lessee has failed to comply with the terms of the lease.

The allegations of the petition are substantially as follows:

By act No. 12 of 1866 the Governor on the sixth of March, 1866, leased to the said Taylor the New Canal and Shellroad belonging thereto, and such other appurtenances and property as thereunto belonged, for the term of fifteen years, ending on the fourth of March, 1881, for an annual rent of $36,000 for the first year, $37,000 for the second, and increasing irregularly to $85,000 for the last year, none of which sums have been paid. By the terms of the lease said Taylor was to put said leased property in good condition, as required in certain specifications by the State Engineer, for $68,000, one third of which was to be credited to him on the rent due for each of the three first years, making the money rent for each of said years $13,333 33⅓, $14,333 33⅓, and $15,333 33⅓, which, with the rent for the subsequent years, make the amount of $208,000, with interest, due the State on the fourth of March, 1873. Said lessee has not complied with the terms of his lease, or kept the property in proper order and repair, or paid the rent as stipulated, and he has thereby forfeited his right to the same.

The lessee alleges that he is dispensed by act No. 118 of 1867 and the contract thereunder of the twenty-ninth of April, 1867, from paying any rents, and in lieu thereof he was to widen the canal to one hundred feet and deepen it to eight feet and perform other conditions in said act.

Now plaintiff alleges that the said act is no law and nothing done under it is binding on the State, because it was expressly reserved from approval by the constitution of 1868, and is in violation of article 149 of said instrument. Should, however, there be any force in said act, the lessee has not complied with the terms and conditions thereof " and especially, that he did not complete the works and enlargements of said canal and the making of the three basins therein provided for within the time required by said act No. 118 or by said notarial agreement ; nor has he now completed said work of enlargement, etc., although said time has long since expired ; nor in the work undertaken by said lessee or his agents in the enlargement of said canal or the construction of said basins did he leave sufficient earth on the embankment to afford such ample protection as existed at the time of making such lease." Hence, all

rights under said acts of 1866 and 1867 are forfeited, and the rent during occupancy is due, and the prayer is that the lease of the sixth of March, 1866, be declared null, the law No. 118 of 1867 unconstitutional, the contract of the twenty-ninth of April, 1867, thereunder, null and void, all rights resulting therefrom forfeited, and that there be judgment for $208,000, with interest on the annual installments, and for rent due up to recovery of leased premises.

The defendant excepted, on the grounds that the petition disclosed no cause of action; that the Attorney General was not authorized to institute this suit; and that the matters set up in the petition relating to the constitutionality of the laws set forth therein have been heretofore heard and decided in a judicial proceeding to which the State and excepter were parties; to wit, the suit of Charles Case, Receiver, vs. Richard Taylor, in which the State appeared, and the judgment therein has become final, and the Attorney General and his representatives are precluded thereby, and are estopped from questioning the same.

The answer of defendant contains general and special denials and the averment that all his obligations in the premises arise under his contract with the State as modified and amended by the statutes of 1867 and of 1870, and as interpreted by the Legislature of the State.

The exceptions were overruled, and upon trial on the merits before a jury verdict and judgment were rendered in favor of the defendant, and the State has appealed.

In our opinion the last ground of the exceptions should have been maintained. In the case of Charles Case, Receiver, vs. Richard Taylor, the State intervened, alleging that the rights of said Taylor under the notarial act of lease of the sixth of March, 1866, no longer exist as therein provided, but have been materially modified and altered by the act No. 118 of 1867 and No. 82 of 1870, and asserting the binding force and operation of said acts to protect the rights of the State in relation to the said canal, etc., and succeeded in her demand. Having deliberately and solemnly invoked these statutes when she considered them essential to the protection and preservation of her rights under the contracts with the defendant now in question, she is estopped from assailing them or denying their validity when she may think her interests as to the same rights will require it. The State is bound by her judicial pleadings and admissions the same as private persons, and is entitled to no greater right or immunity as a litigant than they are. The doctrine of estoppel applies to the State just as it does to individuals. The plea, in this respect, is not *res adjudicata*, but estoppel, and should have been maintained, and consequently the State can not be heard in this action to deny the constitutionality of these two statutes the validity and benefits of which she has heretofore invoked.

The other two grounds of exception were properly overruled.

The plea of no cause of action is not identical with nor does it involve that of inconsistent and contradictory allegations, or that of vague and insufficient allegations. A cause of action is set out in the petition, although the charges may be vague or inconsistent. No bill of exceptions is reserved to the introduction of evidence as to facts not alleged.

The case was argued at considerable length, both orally and by brief, and after the oral argument plaintiff's counsel filed a brief, in which the issue involved is thus stated:

"The main question in this case is, has the plaintiff proved a noncompliance on the part of the defendant with his contract? In answering this question, and the brief of the defendant, we shall confine ourselves to those questions of fact which are proved by many witnesses, and have never been disputed:

"First—By the lease of 1866 the defendant was to build new wharves on both sides of the canal from the head of the basin down to the tollgate (Claiborne street). All of the witnesses prove that the wharves extend only to the Magnolia bridge. The surveyors place Claiborne street from nine hundred to one thousand feet beyond the bridge. There is a failure, then, to build from eighteen hundred to two thousand feet of new wharf.

"Second—The defendant agreed to pay a certain annual rent. The witnesses proved he had paid only the first year's rent. But the defendant sets up as a defense to this, that by act and contract of 1867 this payment of rent was dispensed with. This admits the non-payment and sets up an excuse for the failure.

"Third—But by contract of 1867 the defendant, among other things, agreed to construct three large basins, each one thousand feet long by three hundred feet wide, with wharves around them, and graded approaches to them, according to plans and specifications.

"The proof is, that not one of these basins was ever commenced. This fact is admitted in the brief to which this is a reply.

"But the defendant sets up the act of 1870 as a defense to the part of his contract requiring three basins, etc.; and here it may be as well to observe that the act of 1870 was his defense and pleaded by him. The State had no occasion to plead it.

"Fourth—The act of 1870 substituted ' sixteen.' for ' three ' (basins), 'not less than two hundred feet in length,' for ' one thousand feet,' and ' fifty feet in width' for ' three hundred feet,' as the size of the basins. These are the only changes.

"The testimony of all the surveyors of Kenner and the two maps show that only nine of the sixteen basins have been dug, and that no

wharves or approaches to them have been made at any one of these basins. They are said to be in the swamp, where no wharves are required.

"On all these four points, then, we assert that the testimony is affirmative and overwhelming, notwithstanding the assertion in the brief that ' this proof the State has equally failed to make.'

" Fifth—But the defendant says the State Engineer and others in authority have approved the work, and that therefore the State is now barred from setting up a non-compliance.

" The only approval is, ' so far as done.' There is no acceptance of the work by any one, and, carrying the doctrine of approval to the full extent claimed by defendant, which can not be allowed, *the approval can cover only work actually done*. It might possibly stand as a good defense against the charge of imperfect work. *But no approval short of positive legislative action could stand in lieu of work never commenced.*

" Such work is the two thousand feet of new wharf from Magnolia bridge to Claiborne street, the three large basins, and the wharves, etc., around them, or even seven of the sixteen substituted basins, with wharves around the whole sixteen."

We consider the foregoing as the grounds on which counsel for the State rely for annulling the contracts with the defendant; and we will here remark that the main object of the Legislature, as expressed in act No. 118 of 1867, seems to be the widening and deepening of the canal for the benefit of commerce—the title to the act being, "*An Act to authorize the widening and enlarging the New Canal and Basin*," and the consideration for the necessary outlay therefor, including three additional basins, the needed wharves, piers, bridges, etc., declared to be the relinquishment of the annual rent under the existing lease, amounting in the aggregate to seven hundred and fifty-five thousand dollars, and we think this position taken by counsel (as the evidence makes reasonably clear) admits that this main object has been attained, and the question arises: " Is the non-compliance, as above set forth, if fully established, of such character and importance as to demand the abrogation of the contracts between the State and defendant ?"

Of the four points relied on by counsel, two, " the annual rent" and " the three large basins," may be laid out of view—the rent having been relinquished, and the three basins having been substituted by sixteen small ones by the Legislature, and the only matters for consideration are the wharves around the basin or city terminus, under the first contract, and the sixteen small basins under act of 1870.

Act No. 12 of 1866 and a clause in the contract of sixth March, 1866, provide that the lessee shall " make the repairs described by specifications and plans in the report of the State Engineer to the Governor,

State vs. Taylor.

dated January 18, 1866, which shall be made a part of the lease." The said report says on this subject:

"7. Much additional wharf accommodations required at the basin or city terminus of the canal, and it is proposed that the present line of wharves be repaired and new ones continued on each side of the canal until they reach the present toll-gate.

"8. The increasing business of the canal demands the construction of the wharves, and the piling necessary for the same, with additional revetments, will prevent the caving in of the banks, the filling up of the canal, and the encroachments upon the landings or property thereof." The wharves to be of the best materials and labor, and kept in good order. In the act 118 of 1867, and the contract thereunder, the only reference to the subject of wharves, except in relation to the wharves around the three new basins, is the following: * * * "And all wharves, basins, piers, abutments, bridges, etc., shall be constructed according to plans and specifications prepared by the State Engineer."

The plans referred to are not before us, and there is nothing in the specifications of that year (1867) in regard to the wharves at the city terminus of the canal, and it must be admitted that the requirements in the contract and specifications of 1866 are very indefinite. It is stated, in general terms, that the increasing business of the canal demands the construction of the wharves, and it is *proposed* that the line of the existing wharves be continued to the toll-gate (at Claiborne street), but there is nothing in the statutes, the contracts, or specifications fixing the time within which the line of wharves should be completed to the toll-gate. It is to depend on the demands of business, and the evidence does not show that there is a deficiency of wharf accommodations for the business up to this date, or that any one is complaining. The only evidence in the record on the subject is that the wharf accommodations are sufficient for the business, which is shown to have considerably declined since 1867.

From the tenor of the statutes and contracts, and the indefinite stipulation in relation to the extension of the wharves to Claiborne street, and especially the fact that it was to depend on the demands of commerce, and is not a specific, fixed condition as to time, we can not justly hold the failure, as yet, to construct some nine hundred feet of new wharves on each side of the canal such a material part of the contract of lease as to be a cause, under the circumstances, to annul the contract at this time. The obligation still exists to construct the wharves whenever the trade requires it, and the State, or those interested, can demand their construction on such contingency, if the interest of the defendant should not prompt him to do so, it being evident, as well as proven, that his interest is promoted by having every facility for conducting the business in the canal and keeping the canal in good order.

The next point is in regard to the sixteen basins substituted by act No. 82 of 1870 for the three large ones required by act No. 118 of 1867.

On this subject the defendant contends that he has complied with his obligations, and his agent, D. F. Kenner, in his testimony, says: "The sixteen basins have been dug of the length and width contemplated by the statute. The location of those basins was left entirely with the lessee. My instructions were to place them where they would best serve the interests of commerce. I put one of them at Claiborne street, one at Prieur; I put three of them at Galvez, and two of them between Gayoso and Salcedo streets, two of them between Genois and Clark streets, one nearly opposite the lower toll-gate, one about a mile below the toll-gate, one about half-way between the toll-gate and the lake, then four together near the bridge, where a large basin was needed. That is the distribution I made of them." This, he says, was considered most judicious for the benefit of commerce, and was adopted after consulting with a number of timber merchants.

The act No. 118 of 1867 required three large basins with wharves around them. Act No. 82 of 1870, entitled "An Act to facilitate Commerce by providing for the Construction of Additional Basins on the New Canal," enacted "that in lieu and instead of the three basins heretofore provided for by existing law, the lessee of the New Canal is hereby required and directed to dig and construct sixteen basins, each not less than two hundred feet in length, with a width of one hundred and fifty feet, measured from the west bank of said canal."

This is the only provision in said act. The engineers appointed by the court a qua to examine the canal and report its measurement, condition, etc., found only nine basins, but their aggregate dimensions equal those of the sixteen prescribed by the statute, and correspond in location and size with those described by the witness Kenner, and as facilities of that description needful to commerce was the object, and the amount of such facilities designated by the statute has been furnished, and it is not pretended that commerce is suffering or impeded, we doubt whether there is a good ground for annulling the lease simply because the basins have not been kept separate and distinct from each other. We can not see that the State or the interests of commerce have been injured or the spirit of the contract violated in a material part in this respect.

The defendant offered to prove that the work to be done by him under his contracts with the State and under the supervision and subject to the approval of the State Engineer was so done, with his approval and to his satisfaction; that committees of the Legislature, appointed for the purpose, examined said work and reported that it had been satisfactorily performed (including the basins required by the act of 1870), and that by the journals the report had been adopted by the Legislature. We think

the evidence was admissible, as the statute and the specifications made a part of the contract directed that the work should be under the supervision and approval of the State Engineer. Evidence, however, was given by two of the above engineers, appointed by the court, and the State Engineer, also, that the lessee has substantially complied with his contract, and the State Engineer so reported to the Legislature. This, with the other evidence, we think sufficient to protect the lessee from the annullment of his lease in this suit.

As to the order and condition of the canal and appurtenances, the evidence shows that they are constantly requiring repairs, which the lessee makes as needed.

Under the circumstances presented in this record, we do not think it necessary to disturb the verdict of the jury and judgment of the court below.

Judgment affirmed.

----

LUDELING, C. J., *dissenting*. The plaintiff sued to annul the contract with Richard Taylor in relation to the New Canal, on the ground that he had failed to comply with his obligations.

The defendant filed a general denial, and further alleged that his original contract had been changed and modified by the acts of 1867 and 1870 of the General Assembly.

The validity of these acts was attacked by the plaintiff; but inasmuch as in another suit the plaintiff had claimed rights under the said acts of the General Assembly and thereby asserted their validity, the State can not now be listened to when denying their validity, so that in this case the only issue is, has not the defendant complied with the obligations of his contract?

The facts are, that in 1831 the Legislature granted to the New Orleans Canal and Banking Company the right to construct a canal of the width of sixty feet at the top of the water, and of a sufficient depth to admit vessels drawing six feet water, with one or more basins and sufficient breakwater to facilitate the ingress and egress of vessels, and keep the same in repair. Section eight and section fourteen of the same act provide that "the said company shall construct a levee on the upper side of said canal, to protect the same from overflow in the event of the river breaking through the levee at any point above; and shall also lay out a road, not less than twenty-five feet wide, along the whole line of said canal, and cover the same with sand, shells, or other hard substance, so that it may at all times be suitable for carriages to travel thereon, with a suitable drainage canal on the upper side thereof," etc.

Section twenty-six of said act provides that " from and after the

expiration of thirty-five years after the passage of this act the property in said canal and road, with all the land on each side which it has a right to, acquired by forced sale, and which it does acquire by forced sale or otherwise, to the extent of one hundred and twenty feet on each side of said canal, together with the machines and utensils belonging to the canal, as also the house of the toll-receiver, shall be vested in the State of Louisiana, with all the rights to receive tolls therefrom which are hereby granted to the said company," etc.

In anticipation of the canal and appurtenances being turned over to the State, the Legislature on the tenth of February, 1866, passed the following:

No. 12—An Act to authorize the Lease of the New Canal.

SECTION 1. Be it enacted by the Senate and House of Representatives of the State of Louisiana in General Assembly convened, That the canal belonging to the Canal and Banking Company, and constructed under the charter of said company, incorporated March 5, 1831, situated, lying, and being in the parishes of Orleans and Jefferson, together with all the rights, property, privileges, and uses in any way belonging or appertaining thereto, or claimed by said company under said act of incorporation, and which by virtue of said act reverts to the State on the fifth day of March, 1866, be and the same is hereby ordered to be leased for a term of years, not to exceed fifteen nor less than five years; provided, however, that nothing in this act shall be so construed as to have the effect of releasing the Canal and Banking Company from the obligation of returning the property herein described in the good order and condition provided for in their charter.

SEC. 2. Be it further enacted, etc., That it shall be the duty of the Governor, immediately after the passage of this act, to cause to be advertised in one or more newspapers of the city of New Orleans, for the period of twenty days, that the said canal—with all the rights and privileges appertaining thereto or claimed and now enjoyed by the Canal and Banking Company under its charter, except sixty feet immediately adjoining Cypress Grove and Greenwood Cemeteries, toward the canal, which is hereby reserved by the State of Louisiana for the use of the Firemen's Charitable Association of the city of New Orleans—is offered for lease, as set forth in the first section of this act, and to call for sealed proposals for the lease of the same; provided, that the lessee shall be required to make the repairs described by specifications and plan in the report of the State Engineer to the Governor, dated January 18, 1866, which shall be made part of the lease; that he will also be required to keep the canal, shell road and all other property in good working order and condition, as is provided by the charter of the Canal Company; the cost of the repairs to the extent of sixty-eight thousand dollars

shall be allowed to the lessee, in three equal amounts, to be deducted, one third each year, from the annual rent; that the repairs and improvements provided by this section shall be made subject to the approval of the State Engineer; provided, further, that it be made a condition of the lease that the lessee shall permit the culverts now receiving the waters of the second drainage district to remain open.

In pursuance of this act, the contract was adjudicated to Richard Taylor, and the notarial act was passed before T. O. Stark, notary public, on the sixth day of March, 1866, which contains the following clauses:

Now, therefore, the said Governor Wells, in his capacity aforesaid, does hereby grant, devise, lease, and hire unto the said Richard Taylor, here appearing and accepting for himself, his heirs, executors, and assigns, and acknowledging delivery and possession in conformity hereto of the said canal, shellroad, with toll-gates and houses for toll-keepers, one dredgeboat, with two mud-flats, one canal barge, and one piledriver, together with all the rights, property, privileges, and uses thereto pertaining, in the condition as detailed by the State Engineer in his report of January 18, 1866, as appears by the annexed receipt, dated seventh instant, marked "B" and paraphed by me, notary, for identity, for fifteen years, to commence on the fifth day of March, in the year of our Lord one thousand eight hundred and sixty-six, and to end on the fourth day of March, in the year of our Lord one thousand eight hundred and eighty-one, the canal known as the New Canal, lately belonging to the Canal and Banking Company, constructed under the charter of said company, incorporated March 5, 1831, situated, lying, and being in the parishes of Orleans and Jefferson, together with all the rights, property, privileges, and uses in any way belonging or appertaining thereto, or claimed by said company under any of the laws of this State, except the sixty feet of ground immediately adjoining the Cypress Grove and Greenwood Cemeteries toward the canal. And the said Richard Taylor shall have the right of charging and collecting toll for passage through said canal, and of establishing toll-gates, charging and collecting toll for transit through the same on the shellroad, adjoining said canal, to the same extent as the Canal and Banking Company were by law authorized to do, and shall have full power to make such rules and regulations for the management of said canal and preservation of the same, together with the shellroad and all other property in his possession belonging to the State, as in the judgment of said lessee shall be necessary, proper, or convenient for the management or protection of said canal, shellroads, embankments, and all other property belonging to the State, from injury or deterioration. And the said lessee shall have the right to charge for towage through said canal, and to collect the same, to the same extent as the New Orleans Canal and Banking Company, its lessee or lessees, formerly did.

This lease is made and accepted for and in consideration of the yearly rent, payable as hereinafter expressed, on the following terms and conditions:

First—Said Taylor, lessee, shall make the repairs described by specifications and plans in the report of the State Engineer to the Governor, dated January 18, 1866, an authenticated copy of which said specifications and plans are annexed hereto and made a part of this contract, marked " C " and paraphed by me, notary, for identity.

Second—Said lessee shall keep the canal, shellroad, and all other property belonging to the State, and appurtenances to said canal in good working order and condition, as is provided by law.

Third—The cost of the repairs to the extent of sixty-eight thousand dollars shall be allowed to the lessee by way of deduction, in three equal amounts, from the amount of rent for the three first years, that is to say one third of said sixty-eight thousand dollars, to wit: twenty-two thousand six hundred and sixty-six dollars and sixty-six and two-thirds cents, may be reserved by said lessee from the first year's rent, the same amount from the second year's rent, and a like amount from the third year's rent.

Fourth—The repairs and improvements herein provided to be made by said lessee shall be subject to the approval of the State Engineer.

Fifth—Said lessee shall permit the culverts now receiving the waters of the Second Drainage District to remain open.

Sixth—Said lessee shall keep the canal in good order, and shall comply with all the obligations to the State and to the public required of the Canal and Banking Company by its charter for the working and preservation of the canal, under the penalty of a forfeiture of this lease for the violation of the same.

Seventh—Said lessee engages to pay to the Governor of the State on the fourth day of March, 1867, the sum of thirty-six thousand dollars ($36,000), less the sum of twenty-two thousand six hundred and sixty-six dollars sixty-six and two-thirds cents ($22,666 66⅔), which the said lessee may reserve for repairs as herein provided.

On the fourth day of March, 1868, the sum of thirty-seven thousand dollars ($37,000), less the sum of twenty-two thousand six hundred and sixty-six dollars sixty-six and two-thirds cents ($22,666 66⅔), which the said lessee may reserve for repairs as herein provided.

On the fourth day of March, 1869, the sum of thirty-eight thousand dollars, less the sum of twenty-two thousand six hundred and sixty-six dollars sixty-six and two-thirds cents ($22,666 66⅔), which the said lessee may reserve for repairs as herein provided.

On the fourth of March, 1870, the sum of thirty-nine thousand dollars ($39,000).

State vs. Taylor.

On the fourth of March, 1871, the sum of forty thousand dollars ($40,000).

On the fourth of March, 1872, the sum of forty-two thousand dollars ($42,000).

On the fourth of March, 1873, the sum of forty-four thousand dollars ($44,000).

On the fourth of March, 1874, the sum of forty-six thousand dollars ($46,000).

On the fourth of March, 1875, the sum of forty-eight thousand dollars ($48,000).

On the fourth of March, 1876, the sum of fifty thousand dollars ($50,000).

On the fourth of March, 1877, the sum of fifty-five thousand dollars ($55,000).

On the fourth of March, 1878, the sum of sixty thousand dollars ($60,000).

On the fourth of March, 1879, the sum of sixty-five thousand dollars ($65,000).

On the fourth of March, 1880, the sum of seventy thousand dollars ($70,000).

On the fourth of March, 1881, the sum of eighty-five thousand dollars (85,000).

For all of which sums as they shall be respectively paid to the Governor of the State for the time being the said Governor shall give full acquittance and receipt.

And now to this act intervenes Messrs. B. W. Huntington and D. D. Withers, both of the city of New Orleans, State of Louisiana, and who declaring themselves cognizant of the obligations herein assumed by the said Richard Taylor, lessee, make themselves parties hereto, and hereby bind themselves as sureties of said lessee in the amount of thirty-six thousand dollars in the manner and to the extent provided in said act of the Legislature.

Thus done and passed in my office at the city of New Orleans, on the sixth day of the month of March, in the year of our Lord one thousand eight hundred and sixty-six, in presence of Felix Grima, Jr., and Thomas A. Henderson, competent witnesses, who hereto sign with said parties and me, notary.

(Original signed)

R. TAYLOR,
D. D. WITHERS,
B. W. HUNTINGTON,
J. MADISON WELLS,
F. GRIMA, Jr.,
THOMAS A. HENDERSON,
T. O. STARK, Notary Public.

The report of the Engineer of the eighteenth of January, 1866, referred to in the contract, is as follows:

OFFICE STATE ENGINEER LOUISIANA, }
New Orleans, January 18, 1866. }

To his Excellency, J. M. Wells, Governor of Louisiana:

SIR—I beg leave to submit the following report as to the condition of the New Canal, with the repairs and alterations needed to place the same in proper condition.

I have made inquiry with the past and present revenue returned by the canal, shellroad, etc., to the Canal Bank, in order to assist you in the future disposition of the same, and respectfully submit the following as the result:

From the time the canal was completed until 1848 it was managed for account of the Canal and Banking Company, and returned but very light receipts.

On the eighth of July, 1848, the Canal Company leased to Major Ranney for the remaining period of the charter, until March 5, 1866, the basin, shellroad, canal, toll-houses, superintendent's house, negro quarters, stables, and depots, with thirty slaves, forty mules, one dredge-boat, mud-boats, etc., all in good condition.

Major Ranney was to pay the company thirty-three thousand dollars for the first year, thirty-four thousand dollars for the second year, and so on, increasing one thousand dollars every year until the expiration of the lease.

In 1862, when the United States forces entered New Orleans, Major Ranney left the city, and the bank had to resume the charge of the canal. On the first of February, 1863, Mr. Blanc took charge of the canal for the bank, and informs me that during the war the expenses exceeded the receipts of the canal. The bank expended some four thousand dollars in repairs at or about that time.

On the first of July, 1865, Mr. Blanc leased from the bank the canal, with all its appurtenances, houses, etc., with ten mules and harness, for which he pays the sum of one thousand dollars per month.

First—The entrance now existing to the canal is an imperfect and difficult one, being too narrow, and of such form that vessels entering have a great deal of trouble in effecting the same. The accompanying plan to this report will indicate the alteration proposed.

Second—Again, the embankments forming the side of the entrance have, from the effect of the sea and time, become decayed and out of order; new piling and revetment, as per plan, will be necessary, and also the filling up of the embankment with additional earthwork.

Third—The bar formed by annual storms will require occasional dredging, but I hope by the substitution of open piling at the end to obviate, to a great extent, the frequency of dredging.

Fourth—The amount of work requisite will be shown in the plans, and such portions of old work that can not be repaired will necessarily have to be constructed anew; interior revetting will be required some considerable distance down the entrance and adjoining the bridge near the shore.

Fifth—To allow of vessels passing each other more readily, and the gaining of time thereby, I would suggest the construction of four additional "turnouts" along the line of the canal at designated intervals, the turnouts to be two hundred and fifty feet long, twenty-five feet wide, and of the same depth as the canal.

Sixth—Owing to the height of the ridge and the description of soil, with its tendency to cave, it will be necessary to construct said five hundred feet of piling and revetment to prevent the destruction of the shell-road. The plan will indicate the mode proposed for the same.

Seventh—Much additional wharf accommodations required at the basin, or city terminus of the canal, and it is proposed that the present line of wharves be repaired and new ones continued on each side of the canal until they reach the present toll-gate.

Eighth—The increasing business of the canal demands the construction of the wharves, and the piling necessary for the same with additional revetments will prevent the caving in of the banks, the filling up of the canal, and the encroachments upon the landings or property thereof.

Ninth—The canal will require but little dredging, for the soundings taken show a good depth of water.

Tenth—The toll-gates, etc., of the canal need some repairs, likewise the bridges; the mud-boats are worthless; the dredgeboat will require considerable overhauling before it is in proper condition for work.

Eleventh—The shellroad, owing to the occupation of a portion of it by the United States government, requires considerable repairs; the railroad track, crossties, etc., have been removed and an attempt made to grade the same, but it will require many thousand barrels of shells to place it in proper condition.

Twelfth—By reference to the charter it will be observed that a levee and draining canal are called for as parts of the condition of granting the same. The draining canal does not exist at present, although of much importance in carrying away the water from the portion of country lying on the upper side of the canal. Of comparative necessity in the past, its value is greatly increasing since the erection of a draining machine and the more rapid and increased accumulation of deposit in the canal.

The necessity of the canal is fully shown by the filling up of the Bayou St. John, and the fact of its being a condition in the charter proves that the Legislature was aware of the rights of property-holders lying above

37

the canal, and of the evil effects of using a canal intended for naviga-
tion for other purposes; lately the same has been demonstrated by the
fact of the city being obliged to change the drainage of Julia street from
the basin to a canal constructed for that purpose, which leads to one of
the city draining canals.

. The cost of placing the canal, shellroad, etc., in good order and making
the alterations proposed would have amounted to the sum of thirty-five
thousand dollars in ordinary times.

If executed at the present time it will be nearly twice that amount, say
sixty-eight thousand dollars. · The fluctuations of the price of labor,
materials, etc., will increase or diminish the amount, according to the
period of execution.

Respectfully submitted,

WM. A. FRERET, State Engineer.

---

STATE OF LOUISIANA, CITY OF NEW ORLEANS.

I, the undersigned, Charles G. Andry, a notary public, duly commis-
sioned and qualified in and for the city of New Orleans, and the parish
of Orleans, State of Louisiana, do hereby certify the foregoing to be a
true copy of the original act and documents thereto annexed, extant
among the records of Theodore O. Stark, also a notary public of this
city, now temporarily absent from the parish of Orleans, and whose
records are now under my custody.

In faith whereof I grant these presents under my signature and the
impress of my seal of office at New Orleans on this eighteenth day of
December, A. D. 1873.

CHAS. G. ANDRY, Notary Public.

And thereafter the contracting parties appeared before T. O. Stark,
notary public, and entered into the following modified contract of lease,
in pursuance of said act :

STATE OF LOUISIANA, PARISH OF ORLEANS.

Be it known that before me, Theodore O. Stark, a notary public in and
for the said State and parish, duly commissioned and qualified, person-
ally came and appeared Duncan F. Kenner, Esq., herein acting as the
true and lawful attorney in fact of Richard Taylor, Esq., of this parish,
lessee of the New Canal and Basin, the authority of said Kenner being
derived from a power of attorney executed by said Taylor on the twenty-
eighth day of March, 1867, before DuPlessis M. Helm, notary in the city
of· New York, and hereto annexed, who declared that the General As-
sembly of this State has passed an act entitled " an act to authorize the

widening and enlarging of the New Canal and Basin," approved March 14, 1867, a copy of which is hereto embodied as follows, to wit:

No. 118—An act to authorize the widening and enlarging the New Canal and Basin.

SECTION 1. Be it enacted by the Senate and House of Representatives of the State of Louisiana, in General Assembly convened, That Richard Taylor, the lessee of the New Canal and Basin, be and he is hereby authorized and required to widen the New Canal to a width of not less than one hundred feet, and for this purpose to use the land contiguous to the canal belonging to the State, the depth of the canal when widened to be not less than eight feet at the lowest tides; and all wharves, basins, piers, abutments, bridges, etc.; shall be constructed according to plans and specifications prepared by the State Engineer.

SEC. 2. Be it further enacted, etc., That the lessee is hereby required and shall bind himself by the notarial act hereinafter provided for to dig and construct three additional basins, each not less than one thousand feet long by three hundred feet wide, and to this end said lessee is authorized to use the contiguous land belonging to the State, and to obtain lands by purchase or by expropriation, under the act of the General Assembly, entitled "an act for the expropriation of lands to railroads and other works of public utility," approved February 28, 1855; provided, that the land granted to the Firemen's Charitable Association of New Orleans shall be exempted from the provisions of this section.

SEC. 3: Be it further enacted, etc., That as a consideration for the outlay necessary for the improvements to the New Canal and Basin, the said Taylor is authorized to retain the annual payments due to the State under the existing lease; provided, that at least one-fifth of the work shall be completed annually from the time this act is promulgated until the whole improvement is finished.

SEC. 4. Be it further enacted, etc., That the improvements to be made in said canal and basin shall be commenced within one year from the passage of this act, and be completed within five years thereafter, or in failure thereof the annual rent shall be due and payable to the State, as provided in the existing lease.

SEC. 5. Be it further enacted, etc., That at the expiration of said lease all the improvements made to said canal and basins, and on land belonging to the State, or on lands purchased or expropriated, shall become absolutely the property of the State of Louisiana, without any claim by said lessee.

SEC. 6. Be it further enacted, etc., That immediately after the passage of this act it shall be the duty of the Governor to cause a notarial act to be executed embodying the provisions of this act and the plans and

specifications of the State Engineer, to which said act the securities on the original lease shall be parties, and expressly consent to the modifications of said lease, as hereinbefore set forth.

(Signed)                              DUNCAN S. CAGE,
                    Speaker of the House of Representatives.
(Signed)                              ALBERT VOORHIES,
                    Lieutenant Governor and President of the Senate.
Approved March 14, 1867.
(Signed)                              J. MADISON WELLS,
                    Governor of the State of Louisiana.

A true copy:
[L.S.]          J. H. HARDY, Secretary of State.

Now, therefore, the said Kenner, in his said capacity of attorney in fact of said Taylor, lessee, does hereby accept the said act in all its parts, as well the rights given to the said lessee under said act, as the obligations imposed thereby, and does engage that the said lessee will, within the time required by said act, cause the said canal to be widened to a width of not less than one hundred feet, with a depth of not less than eight feet at lowest tides, and to dig and construct three additional basins, each not less than one thousand feet long, by three hundred feet wide; and all wharves, basins, piers, abutments, bridges, etc., which the lessee may have occasion to construct shall be constructed according to plans and specifications prepared by the State Engineer, hereto annexed, but which are accepted by said lessee only in so far as they carry out the terms and conditions set forth in the above-cited act of the Legislature.

And now personally came and appeared Messrs. D. D. Withers and B. W. Huntington, securities of said Taylor, lessee, in the original lease executed between the State and said Taylor, by act before me, notary, under date of the sixth day of March, 1866, who severally declared that they do hereby expressly consent to the modifications of said lease provided for by said act of the General Assembly and by this act; and now appears his Excellency J. Madison Wells, Governor of the State of Louisiana, who in accordance with the requirements of said act of the General Assembly has caused this act to be prepared, and does hereby accept the same on behalf of the State of Louisiana.

Thus done and passed in the office of the undersigned, notary, at New Orleans, this twenty-ninth day of April, A. D. eighteen hundred and sixty-seven, in presence of Charles G. Andry and Edgar Grima, competent witnesses, who hereto sign with said appearers and me, notary.

Original signed: R. Taylor, *per pro* Duncan F. Kenner; D. D. Withers, J. Madison Wells, Governor of Louisiana; B. W. Huntington, Charles G. Andry, Edgar Grima, T. O. Stark, notary public.

COPY OF DOCUMENTS ANNEXED TO THE ORIGINAL ACT.

Specifications for the widening and enlarging of the New Canal and Basin.

Specifications of State Engineer to be embodied in the notarial act, as required by an act of the Legislature, approved March 14, 1867, to authorize the widening and enlarging of the New Canal and basins, etc.:

First—The canal to be widened to one hundred feet; the depth of the canal when widened to be not less than eight feet at the lowest tide. In widening the canal all stumps and roots of trees shall be removed, leaving a clear channel.

Second—The new basins shall be of the dimensions and areas required by the act approved March 14, 1867. That is to say, the lessee shall dig and construct three additional basins one thousand feet long each, and three hundred feet wide, the depth of the basins to be the same as the canal.

Third—The wharves for the new basins to be constructed as shown on plans numbered one and two, and in the following manner: The piles to be driven at distances of ten feet apart, measuring from centres; the piles to be twelve inches square at the but-end and ten inches at the small end, and to be driven not less than fifteen feet into the solid ground. The caps to be twelve inches square and bolted to each pile head with one three-quarter by twenty-inch ragged bolt; a string course, ten inches by eight inches, to be bolted to the inside of the piles near water level, by three-quarter by fourteen-inch ragged bolt, two at each end of stringers, and one at each intermediate pile. Sheet piling of three-inch plank to form a revetment to be driven on the inner side of string course, and each plank to be fastened with two seven-inch boat spikes. The sheeting to be driven at least four feet six inches into the solid ground, and the heads of plank to be left one foot above string course.

Fourth—The top of wharves to be covered with three-inch plank laid half an inch apart. A ground sill ten inches by eight inches to be provided, and each plank to be fastened with four seven-inch boat spikes, two at each end.

Fifth—Mooring piles to be driven along the new line of wharves at distances not exceeding twenty-five feet apart, the piles to be ten inches square, to project two feet above the planking, and to be neatly dressed off at the corners and top.

Sixth—The whole of the timber for the above works to be of the best quality of yellow pine, free from all defects.

Seventh—On the completion of the wharves in the basins, the ground in rear of the planking shall be graded to meet the levels of the streets, all irregularities of the ground removed, and the whole left clear of rubbish.

Eighth—All bridges, piers, wharves, basins, abutments, etc., shall be constructed of similar materials to those now built, and of the best materials, and the whole shall be constructed in accordance with the plans of the New Canal signed by the State Engineer marked or numbered one, two, and three, and bearing the dates of nineteenth January, 1866, and fourteenth of March, 1867.

Ninth—In enlarging the canal a sufficient quantity of earth to be deposited on the bank of the canal to afford such ample protection against all overflow or inundation as now exists.

Tenth—The lessee to furnish and provide all the labor and materials necessary for carrying on and completing the work designated in this specification, together with all necessary implements, tools, dredgeboats, pile-drivers, etc.

Eleventh—The whole of the work to be executed in the best and most workmanlike manner, under the supervision, according to the lines, levels, sections, detail, drawings, and to the entire satisfaction of the State Engineer.

New Orleans, Louisiana, March 27, 1867.

WILL. A. FRERET, State Engineer.

Know all men by these presents that I, Richard Taylor, of New Orleans, in the State of Louisiana, have made and do hereby make, constitute, and appoint Duncan F. Kenner, of the same place, my true and lawful attorney for me and in my name, and as my act and deed, to accept from the constituted authorities of the State of Louisiana a certain lease of the New Canal and Basin upon the terms and conditions set forth in an act of the Legislature of the said State passed on the fourteenth day of March, 1867, such new lease to be in modification of one that I now hold from said State for the same property, and with full power to sign my name to all said formal acceptances of such lease, as well as to the lease itself, and to acknowledge the same for me and as my act and deed, as fully and completely as I could do if present, and to sign and acknowledge for me all such other papers as may be necessary, in his discretion, connected with said lease or the modification thereof, hereby ratifying and confirming all that my said attorney shall do by virtue hereof.

Witness my hand and seal this twenty-eighth day of March, one thousand eight hundred and sixty-seven.

[L. S.]                                              R. TAYLOR.

Witness—DuPLESSIS M. HELM.

STATE OF NEW YORK,     }
City and County of New York.  } s.s.

On this twenty-eighth day of March, A. D. 1867, personally came before me Richard Taylor, to me known to be the person described in and

who executed the foregoing power of attorney, and acknowledged that he executed the same for the uses and purposes therein contained.

In witness whereof I have hereunto set my hand and affixed my official seal the day and year last above written.

[L. S.]                                    DUPLESSIS M. HELM,
                                        Notary Public, City of New York.

On the twenty-eighth of March, 1870, the General Assembly passed act No. 82, which is as follows :

No. 82—An act to facilitate commerce by providing for the construction of additional basins on the New Canal.

SECTION 1.   Be it enacted by the Senate and House of Representatives of the State of Louisiana, in General Assembly convened, that in lieu and instead of the three basins heretofore provided for by existing law, the lessee of the New Canal is hereby required and directed to dig and construct sixteen basins, each not less than two hundred feet in length, with a width of one hundred and fifty feet, measured from the west bank of said canal.

SEC. 2.   Be it further enacted, etc., That this act shall take effect from and after its passage.

(Signed)                                   MORTIMER CARR,
                           Speaker of the House of Representatives.
(Signed)                              ·   OSCAR J. DUNN,
                   Lieutenant Governor and President of the Senate.
Approved March 28, 1870.
(Signed)                                   H. C. WARMOTH,
                              Governor of the State of Louisiana.
A true copy:
              GEO. E. BOVEE,
                           Secretary of State.

It is not pretended that the defendant has performed the works designated in *the Engineer's report;* on the contrary, it is strenuously insisted that the act of 1866 and the act of 1867, and the contracts thereunder, "nowhere provide for the performance by the lessee of all the proposals or suggestions of the State Engineer, Frerot, in his letter of January 18, 1866.

"The act of 1866 provides only that the lessee shall make the *repairs* recommended by that letter," etc.; and it is further said the "plans of the State Engineer were accepted by said lessee *only in so far as they carry out the terms and conditions of the act of* 1867." If by this last sentence it is meant that the lessee did not accept the terms expressed in the notarial act, then there would be no contract, if the act of 1867 be different from the notarial act, for want of a concurrence of mind.   But the defendant sets up this contract, under the act of 1867, himself, as a

modification of the one made under the act of 1866, and he can not say he is not bound by its terms.

The act of 1867, it is true, uses the word *repairs* in one place when referring to the Engineer's report, but it immediately after provides that "the costs of *the repairs* to the extent of *sixty-eight thousand dollars* shall be allowed to the lessee, in three equal amounts, to be deducted one third each year from the annual rents;" and then it adds that "the *repairs and* IMPROVEMENTS provided by this section shall be made," etc.

There is no room for a serious doubt that the Legislature intended to have the contractor do the works reported as needed by the Engineer, and which report was made a part of the specifications to be annexed to the notarial act. The very sum which he estimated it would cost at present prices to do the *whole work recommended* was allowed to the lessee for making the *repairs and improvements*.

Now, the act of 1867 provided that the canal be made one hundred feet wide and that three *additional* basins, each not less than one thousand feet long, by three hundred feet wide, should be made, all to be eight feet deep at lowest tide, for which works the amounts stipulated to be paid by Taylor for the rental of the canal should be remitted to him. It did not change or affect the other *obligations* of Taylor to the State created by the contract of 1866 any more than it affected his *rights* under said contract. Under the contract of 1867 he assumed the obligation to make the above-mentioned improvements in addition to what he had engaged to perform in the contract of 1866.

The third section of the act of 1867 required that one fifth of the work be done annually until the whole is finished. I am convinced from the evidence that this provision had not been complied with when the act of 1870 was enacted. I am equally convinced that the defendant had failed in several other important particulars to perform his contract under the act of 1867; to wit:

He has not made "the repairs described by the specifications and plans in the report of the State Engineer to the Governor," dated January 18, 1866. The new wharves have not been "continued on each side of the New Canal until they reach the present toll-gate." They have not been begun from Magnolia to Claiborne street, say one thousand feet on each side. The "levee and draining canal" on the upper side of 'the canal" has not been made, as required by specification twelve of the State Engineer's report. The entrance to the canal (specifications 1, 2, and 3) has not been improved as required. The shellroad has been repaired only in part; nothing has been done this side of Claiborne street, as required by specifications of State Engineer.

For all this, and especially the two thousand feet of extra wharfage, defendant was to retain sixty-eight thousand dollars during the first

three years of the lease. This presupposes that the improvements were to be made during the three years at the most, but they have not been made at all.

The act of 1870 appears, from its terms, to have been passed for the *relief* of the defendant. It provides that, in lieu of the three basins of one thousand feet in length by three hundred feet wide, *sixteen* basins, each *not less* than two hundred feet in length, with a width of *one hundred and fifty feet*, measuring *from the west* bank of the *said canal*—or in plain language, *fifty feet wide.*

But even this obligation has not been performed.

The evidence shows that there are only *nine* basins fifty feet wide, and that there are no wharves around them. But it is pretended that these *nine* basins measure in the aggregate about thirty-two hundred feet in length, and therefore that is a compliance with the contract. The law and the contract permitted the contractor to make the basins as long or as wide as he pleased, but both required him to make them *at least* two hundred feet in length, and the contract required *sixteen*. As the counsel for plaintiff well remarked, it is not possible to truthfully call *nine* basins *sixteen* basins.

I therefore dissent from the opinion of the majority.

TALIAFERRO, J. I concur in the dissenting opinion of the Chief Justice.

ON REHEARING.

WYLY, J. After re-argument of this case and upon mature deliberation, we have come to the conclusion that our former judgment herein is correct.

It is therefore ordered that our former judgment remain undisturbed.