FIFTY-FIRST ANNUAL REPORTS, 1899. 683·

Hoggard and Wife vs. Mayor and City Council of Monroe.

No. 13,019.

W. E. HOGGARD AND WIFE VS. MAYOR AND CITY COUNCIL OF MONROE.

SYLLABUS.

1. Municipal corporations are not liable in damages for acts of their Common Councils, in respect to matters entirely outside of the powers of the corporation.

2. The authority of towns situated on navigable streams to establish and operate public ferries rests entirely in Louisiana upon special grants to that effect, and the fact of the existence of such special grant must be averred. in a petition seeking to hold a municipal corporation liable for damages claimed to have occurred in the maintenance of a public ferry.

ON APPEAL from the Fifth Judicial District Court for the Parish of Ouachita. *Potts, J.*

*Hudson, Potts & Bernstein* and *C. J. Boatner* for Plaintiffs and Appellants.

*Stubbs & Russell* for Defendants and Appellees.

Argued and submitted January 30, 1899.
Opinion handed down February 6, 1899.
Rehearing refused March 20, 1899.

The opinion of the court was delivered by

NICHOLLS, C. J. This case is before us through an appeal by plaintiffs from a judgment of the District Court sustaining defendants' exception of no cause. of action.

Plaintiffs in their petition asked judgment in the sum of fifteen thousand dollars as damages for the death of their minor son, who, it was alleged, was drowned from a ferry boat, through the negligence and misconduct of defendants' servants and employes in charge of the boat.

The allegations of the petition bearing upon the issue before us were:

"That on the 16th of August, 1898, the defendant corporation was engaged in the maintenance and conduct of a public ferry across the·

Ouachita River, a navigable stream within the corporate limits of the city of Monroe.

That, on said day, Charles Hoggard, the minor son of petitioner, was engaged in hauling wood to the city of Monroe, and, in so doing, was compelled to cross the said Ouachita River at said ferry, and at the invitation of defendants' servant and employee entered the flat-boat belonging to and operated by said corporation. Driving his team on said ferry-boat, there being no barriers at the rear end of said boat, he stopped the same on or near the centre of the boat, when he was required by the keeper of said ferry, (the employee of said corporation), to drive to the rear of the flat or ferry-boat to make room for other wagons and teams thereon.

That, in his effort to obey these instructions, his team became unmanageable, and walked off from the rear of said boat into the river, carrying and precipitating the wagon and petitioners' son with them into the stream, where, after a great and desperate effort, and struggle to save himself, he was drowned. That, notwithstanding ample time elapsed from the precipitation of plaintiffs' son into the water, until he lost his life, there was no effort whatever made by the said corporation, its employees and servants, to render him any assistance, or attempt to save his life. That the death of their son was the result of gross, wanton and extreme negligence, and criminal carelessness on the part of said corporation and its employees and servants in the fitting out and operating of said ferry, and not from any fault or carelessness of petitioners' son.

That said negligence on the part of the corporation, its servants and employees consisted, among other things, especially in its failure to provide its boats with suitable chains, poles or other barriers, to prevent teams, vehicles and passengers from being precipitated, as was their son, into the river, which chains, poles or barriers it was incumbent on the defendant corporation, under the law as a keeper of a public ferry, to provide its boats with, as well as other necessary appliances for the safety of persons trusting their lives and property into its temporary care and keeping.

That said negligence of the defendant corporation, its servants and employees, especially consisted further, in the command of the keeper of said ferry, (he being the servant and employee of defendant) to plaintiff's son to drive his team to the rear of said boat and make room for other teams, notwithstanding the absence of a barrier

or other character of appliances to check the same and prevent its precipitation into the water, and further, in the absolute failure on the part of the corporation, its employee and servants to make any effort whatever to assist plaintiffs' son in his struggles to save his life, notwithstanding there was ample time in which such effort could have been successfully made, if the said defendant had provided its ferry with properly constructed life saving appliances, as it should have done, and which failure was negligence.

## OPINION.

Plaintiffs allege, that the city of Monroe was engaged in the maintenance and conduct of a public ferry across the Ouachita river, a navigable stream, within the corporate limits of that city, "but they nowhere allege, that this was done under the authority of general law, of statutes conferring powers to that effect upon municipal corporations, generally, or of a special provision in its charter. The circumstance that municipal corporations may be situated on the banks of navigable streams, does not carry with it an inherent or impliedly granted power to operate a ferry across the stream. (Millsaps vs. Mayor & Council of Monroe, 37th Ann. 641.) If it did, it would be proper for us to take judicial notice of the fact. We know of no statute conferring generally a power of that kind upon towns so situated; on the contrary, Section 1501 of the Revised Statutes, confers upon police juries, throughout the State, the exclusive privilege of establishing ferries within their respective limits and of generally regulating the police of the same, except those within the control of municipal corporations." The ferries referred to as being "under the control of municipal corporations," are those under the control of municipal authority by direct, general or special statute grant.

There being no general, inherent or implied authority, or general statute vesting authority in municipal corporations to establish and operate public ferries, the right to do so must rest in particular cases upon special authority, and the existence of that authority should be specially pleaded.

Plaintiffs herein make before us the broad contention, that the city of Monroe is bound to them independently of any authority in it, either general or special, to operate ferries. That liability flows from the fact itself, that the city did carry on a ferry, and that as resulting from that fact, injury was done to plaintiffs' son. They urge that it

is monstrous to say that the city of Monroe should operate a ferry, freed from all responsibility for the manner in which it was conducted, but this argument involves an assumption of fact, that "the city" did operate such a ferry. It may be true that one was conducted under authority of the common council, in the name of the city, but unless the corporation itself was authorized to establish the ferry, it can not be said that the act of the council was the act of "the city." The council represents the city, only in respect to matters which fall within the corporate powers of the corporation. Beyond this, its acts are *ultra vires*.

We think that it is universally recognized as law, that acts of the directing body of municipal corporations, covering matters entirely beyond the powers of the corporation, do not bind the latter, though it has been held if the acts be within the powers, but directed to be done at some particular time, or in some particular manner, departure from such provisions of law, would not necessarily make the acts absolutely void.

Defendant refers the court on this subject to 2 Dillon's Municipal Corporations, Sections 968-971, and Section 973 (a) Note, 2 Thompson's Negligence, p. 737; 15th Am. & Eng. Ency. of Law, p. 1165; Elliot on Roads and Streets, pp. 355, 356; Sherman and Redfield on Negligence, Section 299; Brice's *ultra vires* (Green's Ed.), p. 246; Becker vs. City of Lacross, 4 vol. American Neg. Rep., 96; 15 Utah, 401; 2 N. Y., 261; 76 N. Y., 506; 127 N. Y., 165.

Plaintiffs advance in support of their position, a decision of the Supreme Court of the United States, in Salt Lake City vs. Hollister, 118 U. S., 256, but we think the court in that case did not intend to go, nor did it in fact go to the extent which plaintiffs assert.

That case was presented and passed upon, under an exceptional state of facts. The city of Salt Lake was not brought into court upon a claim made against it based on either contract or tort, but was in court as a plaintiff seeking to recover money which it alleged it had been improperly and illegally made to pay, but under protest.

The city in bringing its suit, fell under the operation of the rule, that the right to resist payment of a claim when advanced is much broader than is the right when money has been paid under it to recover it back. Independently of this, the Supreme Court held, that the law made the imposition of a tax in favor of the government follow as the immediate and direct result of the fact itself of the carry-

ing on of a particular business without reference to who carried it on, or under what circumstances it was done.

The city of Salt Lake had, without authority, carried on a distillery. Called on to pay a tax, it made the payment, but, under protest, and sought afterwards to have the sum so paid reimbursed to it. The court held, that the claim so presented, was not well founded, and in the course of its opinion declared and showed, that the acceptance of the doctrine contended for was against public policy in tax matters, as it would lead to the destruction of the tax system.

There is no matter of public policy favoring the acceptance of the doctrine advanced by plaintiffs in cases like the present; on the contrary, it would lead up necessarily to ruinous public results, and would do away with all the checks which experience has shown to be absolutely essential for the safety and well being of the different communities. We would not be justified in departing from established legal land marks to meet the hardships and supposed equities of a particular case.

For the reasons assigned, it is ordered, adjudged and decreed, that the judgment appealed from be and the same is hereby affirmed.