LAND, Justice.
 

 On the 11th day of May, 1936, the Governor signed an oil, gas and mineral lease from the State to the Shell Oil Company, Inc., the relator herein, the name of which was then Shell Petroleum Corporation.
 

 A consideration of $27,500 was paid the State for the lease, for which consideration the lease remained in force for a period of one year from its date, without the necessity of drilling, and the lessee was given the right to defer the commencement of operations successively during the five-year primary term for periods of one year each by paying on or before each anniversary date the sum of $13,750.
 

 On or before May 9, 1937, the relator paid to respondent, Register of the State Land Office, $13,750, in order to keep the lease alive for another year.
 

 On May 9, 1938, or before, the relator made a similar payment of $13,750 to the Register.
 

 On May 9, 1939, relator tendered to the Register $13,750 to keep the lease alive for another year. The Register refused the tender on the ground that certain irregularities in the advertisements of the lease rendered its validity doubtful.
 

 Relator then filed this suit seeking a writ of mandamus directing respondent, the Register, to accept the tendered rental.
 

 Relator has filed a plea of estoppel setting forth that the State and the Register are estopped to deny or question the validity of the lease, because of the receipt by the Register of the $27,500, consideration
 
 *987
 
 for the lease, and the two rental payments of $13,750 each, all of which sums, it was shown, were transmitted by the Register to the Treasurer and applied by him according to law, and further by the fact of relator’s having conducted, in the spring of 1937, extensive and costly geophysical explorations on the leased property without objection from any State officer.
 

 In the alternative, relator contends that, if the State is not estopped, the lease is not invalid because of the irregularities complained of by respondent.
 

 From a judgment recalling and setting aside the alternative writ of mandamus herein issued, and rejecting its demands, relator, Shell Oil Company, Inc., has appealed.
 

 (1) This case was tried upon an agreed statement of facts.
 

 It is admitted by the Attorney General that a fair and ample consideration was paid for the lease. No third person has intervened in this suit to complain of any injury whatsoever by reason of the lease having been made to the Shell Oil Company, Inc., by the Governor of the State. The lease is an executed contract. The State has received as benefits from its execution the sum of $55,000, upon the tacit representation that the lease was good and valid. Relator has spent considerable other sums of money in exploring by geophysical surveys the property of the State, which now demands that the lease be declared invalid, without any tender of the sums received, or of the sum expended by relator in making geophysical surveys of its property.
 

 (2) It is well settled that the doctrine of estoppel applies to the State just as it does to individuals.
 

 The Federal Circuit Court of Appeals for the Fifth Circuit, in which the State of Louisiana is included, recognized the doctrine of estoppel in Police Jury of Richland Parish v. Caldwell & Company, 26 F. 2d 74, 75. In that case the Police Jury took the position that Caldwell & Company was not entitled to certain interest, and other benefits under bonds it had acquired, because it alleged that the manner of acquiring the -bonds was irregular and unconstitutional.
 

 The court said: “In this case we are of opinion that the question whether the contract or statute is in violation of the Constitution is immaterial. That question would doubtless be an important one, if the contract for the sale and purchase of bonds were executory. But here the contract has been fully and completely performed. If it were between individuals, they would be estopped to attack it as -invalid.
 
 In our opinion, the parish, having received the benefits of the contract, is estopped to escape its burdens.
 
 In order to recover unearned interest, it would be obliged to return the proceeds of the bonds it had received, and that it does not offer to do. The contract will have to be- enforced as the parties made it. It cannot be assumed that Caldwell & Co. would have accepted the bonds upon any other terms than those agreed upon.
 
 In Louisiana the doctrine of estoppel applies to the state and its subdivisions, to the full extent that it does to individuals.
 
 State v. Cockrem, 25 La.Ann.
 
 *989
 
 356; State v. Taylor, 28 La.Ann. 460; State v. Ober, 34 La.Ann. 359; State v. New Orleans, etc., R. Co., 104 La. 685, 29 So. 312; Gilmore v. Schenck, 115 La. 386, 39 So. 40; Clark v. City of Opelousas, 147 La. 1, 84 So. 433.” (Italics ours.)
 

 In Burk v. Livingston Parish School Board, 190 La. 504, 182 So. 656, a verbal contract for performance of architectural services by plaintiff for defendant School Board was entered into. The Board attacked the validity of the contract on the ground that the statute required it to be in writing.
 

 It was held in that case that, although the contract should have been' in writing, the fact that the work was done, contract completed and part of the price paid es-topped the School Board from avoiding liability for the balance 'on the ground that the contract should have been in writing.
 

 It is said in the Burk case, 190 La. at page 507, 182 So. at page 657: “It is an equitable maxim of our Civil Code that ‘no one ought to enrich himself at the expense of another.’ R.C.C. Art. 1965.
 

 “‘Neither law, equity, nor good conscience will allow one to claim the benefits and at the same time escape the obligations of an undertaking. Willoughby v. Fidelity Co., 16 Okl. 546, 85 P. 713, 7 L.R.A..N.S., 548, and notes, 8 Ann. Cas. 603. Sheref-Gillett Co. v. Bennett, 153 La. 304, 309, 95 So. 777, 779.
 

 “ ‘A person cannot accept the benefits of an act and repudiate its obligations. Succession of Monette, 26 La.Ann. 26; Theriot v. Michel, 28 La.Ann. 107; Sherer-Gillett Co. v. Bennett, 153 La. 304, 95 So. 777 Horne v. Beattie, 167 La. 647, 120 So. 38, 39.”
 

 In Turfitt v. Police Jury of Tangipahoa Parish, 191 La. 635, 186 So. 52, the Police Jury incurred indebtedness for courthouse square paving and received benefits of paving, which was completed and accepted. It was held in that case that the Police Jury was estopped from avoiding liability for unpaid balance of indebtedness on the ground that the resolution authorizing the indebtedness did not provide for its payment, as required by Section 2448 of the Revised Statutes.
 

 (3) The State has two classes of powers: the one legislative, public, governmental, in the exercise of which it is a sovereignty and governs its people; the other, proprietary quasi-private, conferred upon it not for the purpose of governing its people but for the private advantage of the inhabitants of the State itself as a legal personality. Wykes v. City Water Company, C.C., 184 F. 752, affirmed 9 Cir., 202 F. 357, and cases therein cited.
 

 This distinction as applied to estoppel is made quite plain in 10 Ruling Case Law, Verbo Estoppel, Section 31, wherein it is stated: “It has been denied and affirmed with equal confidence that an estoppel can be applied to the government. It is, however, quite well settled that when the State makes itself
 
 a party to an action or to a contract or grant in its proprietary capacity, it is subject to the lazo of estoppel as other parties litigant or, other contracting parties.”
 
 (Italics ours.)
 

 
 *991
 
 While recognizing the soundness of this position, the District Judge came to the conclusion that the things relied on in this case as a basis of estoppel against the State were the unauthorized acts of its officers.
 

 In arriving at this conclusion, the District Judge lost sight of the distinction between the irregular exercise of granted power and the total absence or want of power.
 

 Corpus Juris sets forth this distinction clearly when it says: “Although a municipality or other governmental agency cannot be estopped
 
 by its ultra vires acts,
 
 there is nevertheless a broad distinction to be observed
 
 between an irregular exercise of a granted power, and the total absence or want of pozver; and the rule is that it may be estopped, as right and justice may require,
 
 where the act or contract relied on to create the estoppel
 
 was within its corporate powers,
 
 although the method of exercising the power
 
 was irregular or unauthorized;
 
 and the rule has been applied in respect to contracts not complying with the required formalities, to contracts not void but merely voidable, and to contracts not ultra vires or mala prohibita, even though entered into by virtue of unconstitutional statutes or invalid ordinances.” (Italics ours.) Corpus Juris, Vol. 21, p. 1195, Sec. 195, Verbo Estoppel.
 

 This doctrine has been recognized by the Louisiana Supreme Court in the case of Hoggard v. Mayor, etc., of Monroe, 51 La. Ann. 683, 25 So. 349, 44 L.R.A. 477, wherein many cases are cited.
 

 The Governor of the State of Louisiana, at the time of granting the lease in question, was authorized to do so by Act No. 30 of 1915, Ex.Sess., as amended by Act No. 315 of 1926. The Register of the Land Office was authorized to receive payments under such leases. Therefore, in granting the lease and accepting the payments, these officials were exercising a granted power. There was no absence or want of power or authority in the officials acting on behalf of the State, but merely a partial failure of two of the newspapers to comply with a formality.
 

 The Baton Rouge State Times correctly advertised the letting, stating that the bids were to be received on or before May 9, 1936. The Weekly Messenger (official journal of St. Martin Parish) and the Morgan City Review (official journal of St. Mary Parish) advertised the letting, stating that the bids would be received on or before May 5, 1936. However, they did advertise fifteen full days before either date.
 

 Relator knew of the letting by reading the Baton Rouge State Times, but did not read the parish papers, and became aware of the irregularities referred to in the response of the Register only a short while prior to the tender of the 1939 rental.
 

 There is no collusion even insinuated in the case. No third person claims in this suit that he was injured by the error as to the date of the letting and deprived thereby of making a bid. The State does not contend that it would have gotten a more favorable lease, had the error as to the date of the bidding in the two newspapers not been committed. But, on the contrary, the State admits that the lease
 
 *993
 
 granted to relator is a fair one but that the State is anxious' to have the validity determined so, if it is valid, the State can accept the tendered rental and relator can be free to develop the property.
 

 (4) In the lower court, the Attorney General contended that estoppel should not apply because the Register- of the State Land Office did not have actual personal knowledge of the irregularities now complained of at the time she received the rental payments referred to above.
 

 Nevertheless, it appears from the statement of facts that clippings from the country newspapers were sent to her office with bills for their publication. We are, therefore, of the opinion that knowledge should be imputed to her, for these bills were received in her office by her subordinates in the regular course of affairs. It was her duty to see to it that the offerings of leases were properly advertised and, in addition, she was charged with the responsibility of seeing that the advertisements were correct before she paid for them.
 

 “Knowledge of the truth as to the material facts represented or concealed is generally indispensable to the application of the doctrine of equitable estoppel. * * * It is not, however, indispensable that the knowledge should be actual if the circumstances ' are such that a knowledge of the truth is necessarily imputed to the party sought to be estopped.” 21 Corpus Juris, 1123, Sec. 126; Verbo Estoppel.
 

 (S) The Attorney General finally submits that estoppels are odious before the law and are not favored.
 

 However, American Jurisprudence, Vol. 19, Sec. 4, Verbo Estoppel, says: “Now estoppels, especially those known as ‘equitable’ or ‘in pais,’ are not deemed odious, but are said to be conducive to honesty and fair dealing and promotive of justice and to stand on the broad grounds of public policy and good faith. * * * It is also recognized, however, that it is a doctrine capable of wholesome application; that when properly applied and kept within its proper function, it is founded upon reason and justice and is a principle of good morals as well as law; * * * and that it often enables right and justice to triumph where nothing else known to jurisprudence can do so.” ■
 

 For the reasons assigned, it is ordered that the judgment appealed from be annulled and reversed.
 

 It is now ordered that the plea of estoppel herein tendered by relator, Shell Oil Company, Incorporated, be and is hereby maintained.
 

 It is. further ordered that the alternative writ of mandamus herein issued be and is hereby made absolute, and that the Register of the State Land Office be and is hereby ordered and directed to accept and receive the payment heretofore tendered to her by relator of the sum of $13,750 for the right to defer drilling operations, under the oil, gas and mineral lease described in Article 1 of relator’s petition for a period of one year from May 11, 1939, and further ordering and directing the Register of the State Land Office to issue due and
 
 *995
 
 proper rental receipt for said payment,, within five days after this judgment becomes final.
 

 O’NIELL, C. J., does not take part.