No. 10,969.

| 44 | 137 |
|---|---|
| e110 | 526 |
| 44 | 137 |
| 116 | 289 |

THE POLICE JURY OF THE PARISH OF LAFOURCHE ET AL. VS. THE THIBODAUX BRIDGE COMPANY, IN LIQUIDATION.

Where a corporation builds a bridge for a town and parish jointly, and the exclusive privilege is granted to the corporation to collect toll for a designated number of years, at the end of the franchise, unless there is an express agreement to the contrary, the bridge must be delivered to the parish and town without compensation. The corporations became the owners of the bridge when it was completed, and the corporation which built it only owned the franchise.

The consideration for building the bridge for the political corporation was the franchise granted to the building corporation.

A PPEAL from the Twentieth District Court for the Parish of Lafourche.  *Beattie, J.*

*L. P. Caillouet* for Plaintiffs and Appellants.

*Knobloch & Moore* for Defendant and Appellee.

The opinion of the court was delivered by

McENERY, J.   By Act 67 of 1855 the Legislature of the State authorized the police jury of Lafourche parish and the town of Thibodaux to construct a bridge across the Bayou Lafourche, within the corporate limits of the town of Thibodaux, and the two political corporations were authorized to contract with any person or corporation to build the same, and to grant to the person or corporation constructing the bridge the exclusive right and privilege to collect toll as the police jury or said town might allow for a term not to exceed twenty years.   The privilege to collect toll was granted, and the schedule of prices for crossing the bridge fixed.

The defendant corporation was organized for the purpose of building the bridge.

The company built the bridge.

It was destroyed in 1862.

From this time to 1867, the town of Thibodaux operated a ferry for its exclusive privilege.

In 1866 the police jury of Lafourche and the town of Thibodaux were authorized by legislative act to reconstruct the bridge.

The defendant company under and by virtue of this authority reconstructed the bridge, with the exclusive privilege to collect toll until 31st December, 1891.

The fifth section of the charter of the defendant company is as follows:

" When the period has arrived for the liquidation of the affairs of this corporation, that liquidation shall be conducted by three stockholders to be elected by a majority of the stockholders in amount and shall be styled liquidating commissioners.

"It shall be their duty to sell and dispose of the entire property of the corporation (except the bridge that shall be abandoned to the police jury of this parish and to the mayor and trustees of the town of Thibodaux), on terms to be fixed by a majority of the stockholders in amount, at a general meeting; they shall collect all amounts then due this corporation, and after paying all its liabilities, divide the net proceeds of sale and collection among stockholders," etc.

On the 15th of January, 1892, plaintiffs instituted this suit claiming the right of being put in possession, and without any compensation to defendant, of the bridge in controversy, basing their right on the above quoted article of the charter of defendant's company. The answer of the defendant is that the plaintiffs can not go into possession without paying defendant for the value of the material and the cost of construction of said bridge, and they pray judgment in reconvention against plaintiffs therefor. The judgment of the District Court decrees plaintiffs entitled to the bridge, and awards judgment in favor of defendant in reconvention for $13,500, and plaintiffs appeal therefrom.

The stipulation in the written agreement signed by counsel herein is: "That the sole question submitted for decision is whether or not the plaintiffs under the fifth article of defendant's charter and the law in such cases made and provided are entitled to the said bridge and pier without paying or compensating the defendant company therefor," and it is further stipulated therein that: "In the event of it being held that payment or compensation is due, then the court shall award judgment against plaintiffs for such sums as the evidence may establish, as being equal to the value of the materials and cost of construction of said bridge and pier."

It is admitted that the bridge reverts to plaintiffs, and the question presented is whether they are compelled to pay the defendant corporation for the value of the material and the cost of construction.

There was no written contract between the parties. The bridge company having been organized for the special purpose of building and operating the bridge, it seems that the contract was embodied in its charter.

In the fifth section of the charter it is stipulated that the bridge, at the expiration of the life of the company, shall be abandoned to the plaintiffs. The word "abandoned" was used in the sense that

the company intended to relinquish and surrender its rights of property in the bridge to the plaintiffs.

This is made evident by the fact that in said section five of the charter the company in process of liquidation at the expiration of the charter provided for the sale of all its property, except the bridge, which was to be abandoned to plaintiffs, and the distribution of the proceeds among the stockholders. No provision whatever is made for the sale of the bridge and the distribution of the proceeds; thus showing that no proceeds from its sale were ever intended to be realized.

In the legislative permission to authorize the plaintiffs to contract for the building of the bridge there is no power granted to the plaintiffs to buy the bridge. Without this authority conferred upon the plaintiffs by the Legislature of the State they are without power to purchase the bridge from the defendant corporation.

Under the general power conferred by statute to build bridges, the local authority may purchase a bridge, already constructed, along a highway, which it is necessary for the public to use, by private persons or a corporation.

But when the structure is of that character that it is intended to bridge a navigable stream, costing a large sum of money, and it is necessary to get legislative permission to build it, the local authority can not go beyond the power specially conferred by the act of the Legislature.

In a particular case where the Legislature deems it necessary to grant the power to construct a particular bridge at a designated point, it withdraws the power in the particular case, to build the bridge, conferred upon the local subdivision generally to build bridges. The State issues a special mandate to build the bridge according to legislative will at the point located.

The bridge constructed by the defendant connected a system of public highways.

It continued a highway over a navigable stream. There is no way of vacating or extinguishing the highway except by due course of law. The highway was legally established when the bridge was built. It must remain so, and the defendants at the expiration of their franchise can not obstruct its public use.

The defendant corporation only had a right of franchise in taking tolls.

The bridge when completed became the property of the plaintiffs. There is no obligation on the part of the plaintiffs to pay for the material and cost of construction in the absence of an express agreement.

" It has been held that where a canal company built a bridge partly for its own use and partly for the use of the public, the materials of the bridge after it had been swept away from the place, and after the abandonment of the canal, belonged to the county and did not pass to the purchaser of the canal under a |decree of fore-closure." Elliott, Roads and Streets, p. 36.

The author above quoted in page 33 says: "If the corporation, in consideration of the grant of the franchise to gather tolls for a designated period, builds a bridge connecting with a system of public highways, the fair and just intendment is that at the expiration of the time fixed by law the bridge shall remain for the public. Nor is there any injustice in this rule, for those who accept the franchise must know, as a matter of law, that the bridge which once becomes a part of the system of highways so as to be necessary for the public convenience must so remain, although the period for reaping profit from it may have expired. It is, in truth, on this implied condition that such franchises are granted and accepted."

In the case of Central Bridge Company vs. City of Lowell, 15 Gray (Mass.) 106, it was held that a bridge might be lawfully taken and appropriated to the use of the public by right of eminent domain and without compensating the proprietors for the actual value of the bridge as a structure, independent of their franchise, but only for the loss of the franchise.

The consideration for building the bridge was the franchise to collect tolls for a designated number of years. The plaintiffs needed the bridge for the convenience of the public. The defendants agreed to build it for the franchise granted. The bridge as soon as completed became the property of the plaintiffs, and at the termination of this franchise they are compelled to deliver the bridge to plaintiffs.

They asserted their duty in their charter, when in the fifth section they agreed to abandon the bridge to the plaintiffs.

The defendants owned the franchise and not the bridge.

They had the use of the bridge during the existence of their franchise, and held it in trust for the public. The defendant corporation, under their charter, stood in the same relation to the public as the plaintiffs would have done had they built the bridge.

It is therefore ordered, adjudged and decreed that the judgment appealed from be annulled, avoided and reversed, and it is now ordered and decreed that there be judgment for the plaintiffs decreeing them to be the joint owners of the bridge across Bayou Lafourche built by the Thibodaux Bridge Company, in accordance with the prayer of plaintiffs' petition, and that the liquidating commissioners deliver to the plaintiffs said bridge, with the piers, pilings and appurtenances belonging to the same, without delay and without cost.

And it is further ordered that the reconventional demand of defendants be rejected.