No. 13,054.

EMANUEL SHERMAN AND WIFE vs. PARISH OF VERMILLION ET AL.

SYLLABUS.

*As relates to the parish:*

1. A juror met with an accident which resulted in his death, while he was, with the other members of the jury, in charge of the sheriff's deputy.

2. Complaining of the negligence of the police jury and of the deputy, this suit was brought by plaintiff, his father and mother, for damages.

3. The parishes, like the town or country, indicating the political divisions in certain States of this Union, are not responsible for damages caused by the negligence of police juries in matters in which they have some discretion. They represent the sovereign power and not the tax-payer by whom the damages. if allowed, must be paid.

*As relates to the claim made against the sheriff, a co-defendant:*

1. The action against the parish not being sustained under the state of facts, there was no right of action against the sheriff.

2. It does not appear that the order of the officer was the proximate cause of death. He directed the members of the jury, in the dark, to move further from the courthouse. There were other causes of the accident which precluded plaintiff from recovering, and to which the officer did not contribute.

ON APPEAL from the Seventeenth Judicial District Court for the Parish of Vermillion. *DeBaillon, J.*

*Walter J. Burke & Bro., Weeks & Weeks,* and *W. B. White* for Plaintiffs, Appellants.

*M. T. Gordy* and *Gus. A. Breaux* (*Clegg & Quintero,* of Counsel) for the Parish of Vermilion, Defendant and Appellee.

*W. W. Edwards,* and *Edwards & Greene* for J. O. Hébert, Sheriff and Sureties, Defendants, Appellees.

Submitted on briefs February 8, 1899.
Opinion handed down April 3, 1899.

The opinion of the court was delivered by

BREAUX, J. Plaintiffs, the father and mother of the deceased, seek to recover damages in the sum of $25,000 for the death of their son.

They in substance, in their petition, set forth that their son George, while serving on jury in a criminal case, and while in care of the deputy sheriff, under the order of the presiding judge that they should not separate, he, their son, and the other members of the jury were conducted, in the night time, out of the courthouse, at the request of some of the members of the body, to repair to the closets near the courthouse. They allege that they were compelled to avoid going into the closets for the reason that they were unclean and negligently kept.

They charge that the deputy sheriff was culpably negligent in giving their son and the other members direction to go to a given spot in the dark, which, instead of being, as should have been, a safe place, was a pit (that the police jury had given permission to dig out) in which he fell, and fatally injured himself; that their son knew nothing of that particular place at which he fell, and nothing of the danger to which he was exposed, and in regard to which he was not warned; that in following the direction of the deputy sheriff, no notice was

56

given to their son, and no light was furnished him as should have been furnished, if the officer had been ordinarily careful; that the pit had been there many years to the knowledge of the officer.

. The defendant filed the plea of no cause of action. The District Court sustained the plea, and dismissed plaintiffs' action.

From the judgment of dismissal plaintiffs present this appeal.

Our researches have not resulted in our finding authority in support of the position that parishes can be compelled to respond in damages for the negligence of the deputy sheriff to take proper care of the jury placed in his charge by the presiding judge in a criminal case.

Police juries have authority of administration of parish affairs, and have nothing to do with the trial of criminal cases.

They, under delegated powers, expressed or implied, represent the parish.

We have followed the argument of counsel for plaintiff, and have given some attention to the jurisprudence of the several States of the Union regarding the subject before us.

The contention of plaintiff is that the jurisprudence in States where a county or town system prevails, is necessarily different, and has no application in this State. We, on the other hand, find that, whether, as relates to town, county or parish, these divisions, towns, counties or parishes, have only such power as is vested in them by sovereign authority.

As relates to the parishes (to meet the proposition pressed by plaintiffs that they have greater power than towns or counties in other States), we, to some extent, traced the meaning of the word to its origin. In France it was the ecclesiastical division of the territory, "the spiritual, and, in some particulars, temporal" division; *i. e.,* the district in charge of a curate, and, originally, of the *curati.*

The colonists of Louisiana became accustomed to similar divisions of territory in church matters. In the course of time it was used to indicate political divisions of the State.

From the earliest days there were parishes in the territory; *parishes* at first, afterwards *parroquia* under Spanish rule; and when the State was admitted into the Union, the French name was retained, to indicate the civil divisions of the State; but the responsibility of the parishes and of the taxpayer is limited by legislation, just the same as they are in other States of the Union.

They, the county and parish, have only delegated powers, and such needful powers as are necessary to carry out the delegated powers.

So, as far as we have been able to examine, all the well considered decisions hold that the political divisions of the State are not responsible for damages in cases such as the one before us for decision. The decisions generally hold that, in such cases, the political divisions of the State represent the sovereign, and, therefore, are not responsible for damages.

Those decisions apply, we think, in our State, as they do where the town and county system prevails. .

The complaint is directed against the parish for neglecting to provide suitable closets, and for having left open a dangerous pit near the courthouse.

In the light of judicial decisions, the parish is not liable in an action by a party injured because of the neglect of an officer to perform a corporate duty in a criminal case unless such action is given by statute. Cooley on Constitutional Limitations, p. 246.

Such a suit, as the one here, can not be sustained without statutory sanction.

The exemption from liability, it has been decided, does not apply to villages, boroughs or cities, which accept special privileges from the State covering larger powers, and conferring more valuable privileges. *Ib.*, 247.

Municipal corporations, it is held in many decisions, are made such whether they will or not, and can not be considered in the light of persons who have voluntarily, and for a consideration, assumed obligations, so as to owe a duty to every person interested in the performance. *Ib.*, 245.

Cooley, from whom we have freely quoted, cites in support of his text on Constitutional Limitations, the carefully considered case of Eastman vs. Meredith, in which it was decided, on the principle as stated, that the town is not liable for an accident caused by the floor giving way of an imperfectly constructed townhouse (the imperfect construction was the work of the town).

The exemption of legislative officers is plain, is the view of Cooley on Torts.

"The legislature has full discretionary authority in all matters of legislation, and it is not inconsistent with this authority that members should be called to account at the suit of individuals for their acts

and neglects.   A discretionary power is, in its nature, independent."
Page 376.

This commentator affirms that the principle applies to inferior leg-
islative bodies, such as board of supervisors, councils, and the like.
Page 376.

This principle was recognized by this court in several decisions;
notably, Lewis vs. City of New Orleans, 12th Ann., 190; Stewart vs.
City of New Orleans, 9th Ann., 461.

We find in 12th Ann., *supra*, a striking illustration.

Judge Spofford dissented in the case just cited against the City of
New Orleans, but he was the organ of the court in King vs. St.
Landry, 12th Ann., 859, in which it was held that "no remedy is given
by statute against a parish for private injury."

In 9th Ann., 461, *supra*, the *syllabus* reads, "a municipal corpora-
tion in the exercise of power which it possesses for *public purposes*,
and which it holds as part of the country, enjoys the exemption of
government from responsibility for its own acts and the acts of its
officers deriving their authority from the sovereign power."

The *syllabus* covers fully the principles announced in the decision.
To the same effect is Dillon on Corporations, Vol. 2, p. 969.

"In the absence of a statute giving a remedy, public or municipal
corporations are under no liability to pay for property of individuals
destroyed by a mob."   Add. Torts, 1305; Dillon's Municipal Corpora-
tions, Vol. 2, page 959.

"Usually the functions of the political divisions of the State are
public."   Cooley, page 296.

"The powers empowering municipalities must be construed with
reference to the object of their creation, namely, as agencies of the
State for local government."   *Ib.*, pp. 210, 290.

The question was carefully considered by us recently in the case of
City vs. Kerr and Gally, 50th Ann., 413, and the conclusion was
reached which has a direct bearing upon the issues here.

He repeatedly refers to the local agents of the State.

"Public corporations are but part of the machinery employed in
carrying on the affairs of the State" (*Ib.*)

"Usually their functions are of public nature" (*Ib.*)

Municipal corporations are agencies of government.   Black on
Constitution, p. 280.

They are in their subordinate capacity entrusted with some discretion.

Their functions being public and they being vested with discretion, their responsibility is to the State.

They do not represent the taxpayer when they legislate in matters relating to the State and to criminal affairs.

Their negligence, when the State is directly concerned, is not chargeable to the citizens of the locality.

If the parish were held responsible, they alone would have to pay the damages. We have not found any law under which they may be held for such damages. They, the local authorities, the police jury, are vested with such powers and prerogatives as are necessary to make rules for the government of their affairs.

The citizens can not be held responsible for the agents of the State, when acting for the State, in maintaining local government.

From Cooley, we again quote: "On the other hand, it is settled that these corporations are not liable to a private action at the suit of a party injured by a neglect of its affairs to perform a corporate duty, unless such action is given by the statute" (page 246). Cooley's Constitutional Limitations, 2nd Edition.

"We can reply, taken for granted, that the common law gives no such action." *1b.*

The weight of the judicial decisions, we think, and all the commontators upon the subject, sustain this view.

We pass to the question of the liability of the sheriff.

In our view, the parish not being liable, there remains no right of action against the sheriff.

The act charged was not one for which he was liable.

All that the deputy sheriff did was to order the jury to move further towards the street, away from the courthouse. The jury was under the control of the deputy to the extent only that it was necessary, under the judge's order, not to permit them to separate.

It would be difficult to conclude that one, under the circumstances here, is responsible for such an order without a showing of negligence in having directed the victim to follow a course unavoidably leading to the pit.

The direction to move further, given to the jury, does not lead one to imply that they were to move directly to the pit, so that falling into it was unavoidable.

The juror fatally injured was not by the direction of the deputy compelled to go to the pit, he was left at liberty to guard his person, and not expose himself to a fall. He was not under the necessity of exposing himself at all, if he did not choose.

The order was not to separate; they were not under the physical control of the deputy, save to the extent that they were not to separate from each other.

A direction, such as that given under the circumstances, was not an order compelling the unfortunate young man to fall into the pit; and not to have warned him to avoid the pit, in moving further, was not an act of negligence for which the sheriff can be charged.

Had the deputy directed the juror to the particular spot where the accident occurred, it would be different, but he only directed the juror to move further, without reference to the pit; and it happened that the unfortunate man came to the pit and fell into it.

It can not be said that the deputy was the cause of the fall, when the unfortunate man was directed to move further.

There was nothing to show that he was directed to the pit, or to move in a direct line to the pit in which he fell.

The complaint is that the deputy failed to warn the juror of the danger.

Eleven of the members complied with his direction without falling into the pit.

It is alleged, in substance, that the juror was impaled in the fall "upon a piece of wood or timber, which formed part of the scaffolding" in the wall of the pit.

The proximate or immediate cause of the accident was the wood or timber.

The petition was carefully drawn.

Whether the dangerous pit included the charge of knowledge on the part of the officer, despite the clearness of the charge, is not absolutely certain.

Conceding all that is claimed for the thorough and complete allegation contained in plaintiffs' petition, the question, nevertheless, arises as to whether the officer had reasonable ground to expect the sad consequence.

The idea is "reasonableness of expectation." Wharton on Negligence, 375.

The charge that he had knowledge of the dangerous pit does not

give rise to the imputation of reasonable ground to apprehend that in the pit was a piece of wood or timber that might cause death. One may fall in a pit, even a dangerous pit, without injury.

"The foreseeing of a harm as remotely and slightly probable does not involve the imputation of such harm, for there is nothing that we can do that may not remotely produce some harm, and, therefore, if we are to avoid such imputation, we must do nothing." *Idem a.*, Sec. 76.

Would a prudent man have had cause to expect an accident in acting as did the officer? We are not convinced that the consequence might reasonably have been expected, and that plaintiff has a right of action against the officer.

Finally, in the absence of proof of the proximate cause of the accident and the responsibility arising therefrom, the officer's act, particularly if he was without knowledge of the direct and immediate cause of the accident, is not an act for which damages are due by him.

For reasons assigned, the judgment appealed from is affirmed.

MR. JUSTICE MONROE takes no part, as he was not a member of the court when the case was heard.