(83 South. 653)

No. 23342.

GAUDET et ux. v. PARISH OF LAFOURCHE et al.

(Jan. 5, 1920.)

*(Syllabus by Editorial Staff.)*

1. BRIDGES ⬦39(1)—TOWN OR PARISH NOT LIABLE FOR PERSONAL INJURY FROM FAILURE TO REPAIR BRIDGE ACROSS NAVIGABLE STREAM.

Under Gen. Law, parishes have the exclusive privilege of building bridges (Rev. St. § 2743), and, although the police jury of the parish and the defendant town were authorized by Act No. 67 of 1855 to construct a bridge continuing a highway over a navigable stream, neither the parish nor town were required to keep the bridge in repair, and no remedy is given by law for personal injury resulting from their failure to repair.

2. STATUTES ⬦280—NECESSITY OF PLEADING TO SHOW LIABILITY OF PARISH OR TOWN FOR INJURIES FROM FAILURE TO REPAIR.

Act No. 67 of 1855, giving to the police jury of Lafourche parish and the town of Thibodaux, authority to construct a bridge across Bayou Lafourche, was a special or private act; and in the absence of a pleading of the act, and that it required the maintenance of such bridge in repair, the same being over a natural stream, it cannot be held it was the duty or privilege of the town to build and keep in repair such bridge, so as to render it liable for personal injury through negligence therein.

3. BRIDGES ⬦46(3)—PLEADING LEGISLATIVE REMEDY FOR PERSONAL INJURIES FROM CITY'S FAILURE TO REPAIR BRIDGE OVER NAVIGABLE STREAM NECESSARY.

In an action against a town for personal injuries to one of plaintiffs' minor children, and for the death of another, resulting from a defective bridge across a navigable stream, it was necessary that plaintiffs allege that the town was authorized to build such bridge, an allegation that they built and operated it being insufficient, particularly where it is alleged that in doing so its officers acted over and above the usual and customary duties imposed by city charter; since they represent the city only in matters within its corporate powers, and other acts would be ultra vires, so that, in the absence of an allegation of a remedy given by the Legislature, plaintiffs could not recover.

4. BRIDGES ⬦39(1)—TOWN AUTHORIZED TO CONSTRUCT BRIDGE BEYOND LIMITS NOT RESPONSIBLE FOR REPAIR IN ABSENCE OF STATUTORY REQUIREMENT.

Act No. 67, of 1855, did not make it the duty of the town to establish a bridge over a navigable stream, but left the matter to the discretion of the police jury and the town, and the grant of authority to the town and parish was to perform a public work outside the town limits for the use of the public at large, which belonged to the state itself to perform, so that the parish and city are no more liable for acts or omissions to repair resulting in personal injury than the state itself, particularly where the act does not require them to keep the bridge in repair.

Appeal from Twentieth Judicial District Court, Parish of Lafourche; H. M. Wallis, Judge.

Suit by Alfred Gaudet and wife against the Parish of Lafourche and the Town of Thibodaux in solido for damages for the death of one minor daughter and injuries to another. Suit dismissed, and plaintiffs appeal. Judgment affirmed.

Beattie & Beattie, of Thibodaux, for appellants.

Caillouet & Caillouet, of Thibodaux, for appellees.

SOMMERVILLE, J. Plaintiffs sue the parish of Lafourche and the town of Thibodaux in solido for damages for the death of a minor daughter, and injury to another minor daughter, through alleged fault and neglect of defendants, while Mrs. Gaudet and her children were attempting to cross a bridge in a buggy over Bayou Lafourche, on the edge of the town of Thibodaux, which bridge was owned and operated by the parish and town.

Defendants join in exceptions of no cause and no right of action, founded on the jurisprudence of the state to the effect that there is no remedy at law given against a parish or municipality for a private injury caused by the absence of bridges or neglect to keep them in repair; and on the principle that a parish or municipal corporation, in the exercise of power which it possesses for public purposes, and which it holds as a part of the country, enjoys the exemption of government from responsibility for its own acts, and the acts of its officers deriving their authority from the sovereign power. The exceptions were sustained, and plaintiffs' suit was dismissed. Plaintiffs have appealed.

Plaintiffs allege that the parish and town, through their officers, operated the bridge as a public highway over the bayou. The bridge was a continuation of a public highway leading into and out of the town. They further allege that on the day of the accident, and for some time previous thereto, the bridge was not open to travel, and that a pontoon was in its place for the accommodation of travel across the bayou; that a ramp was provided for the purpose of reaching the pontoon, which was steep and dangerous, the view thereof being partly obscured; that

the pontoon had been moved to permit a boat to pass; "that there was no bar or barrier to prevent the horse and buggy from going into the bayou"; and that the horse walked into the bayou, and one of the plaintiff's children was drowned and another was injured.

[1] The general law is that the parishes have the exclusive privilege of building bridges (R. S. § 2743); and plaintiffs do not allege that the town of Thibodaux was authorized to establish a toll bridge across Bayou Lafourche, which is a navigable stream. The several charters of Thibodaux and the amendments thereto do not give the town such right.

But the same bridge has been in controversies before the court, and we may take cognizance of its history as it appears in those cases. In Police Jury of Lafourche v. Robichaux, 116 La. 286, 40 South. 705, the court say with reference to the bridge:

"By Act No. 67, p. 61, of 1855, the Legislature authorized the police jury of the parish of Lafourche and the town of Thibodaux to construct a drawbridge across the Bayou Lafourche within the limits of said town, and the two political corporations were further authorized to contract with any person or corporation to build the same, and to grant to the person or corporation constructing the bridge the exclusive right and privilege to collect toll as the grantors might allow for a term not exceeding twenty years. A contract was made as authorized with a certain bridge company, and the bridge was constructed and operated under the franchise until it was destroyed in 1862. In 1866 the police jury of the parish and the town of Thibodaux were authorized by legislative act to reconstruct the bridge. The same bridge company reconstructed the bridge, and by contract acquired the exclusive privilege to collect toll until December 31, 1891. The charter of the bridge company provided that on the termination of its franchise the bridge should be abandoned to the police jury of the parish and to the mayor and trustees of the town of Thibodaux."

In that same opinion the court say:

"Police juries have the same power over ferries and bridges that they have over public

roads. In fact and in law a public bridge is but an extension of the continuous public highway."

And, with reference to the same bridge, the court say in the case of Police Jury of the Parish of Lafourche v. Thibodaux Bridge Co., in liquidation, 44 La. Ann. 137, 10 South. 677, wherein the bridge company claimed to be the owner of the bridge at the expiration of the lease:

"The bridge constructed by the defendant [company] connected a system of public highways. It continued a highway over a navigable stream. There is no way of vacating or extinguishing the highway except by due course of law.

"The highway was legally established when the bridge was built. It must remain so, and the defendants, at the expiration of their franchise, cannot obstruct its public use. The defendant corporation only had a right of franchise in taking tolls. The bridge when completed became the property of the plaintiffs. There is no obligation on the part of the plaintiffs to pay for the material and cost of construction in the absence of an express agreement."

And the bridge was declared to be the property of the parish and town.

With reference to the liability of the parish authorities for damages for injuries to private individuals who may have used the bridge in question, the court say, in a similar case:

"There was no law which compelled the parish of St. Landry to build the bridge in question. Having built it, there was no law which required the parish to keep it in perpetual repair. The whole subject seems to have been confided to the uncontrolled discretion of the police jury of the parish.

"'The police juries shall have power to make all such regulations as they may deem expedient, as to the proportion and direction, in making and repairing of the roads, bridges, causeways, dykes, levees, and other highways.' Acts 1813, p. 138; R. S. p. 408, § 18. See, also, R. S. p. 480, § 1. * * *

"As no remedy is given by statute against a parish for a private injury caused by the absence of bridges or a neglect to keep them in repair, and as it is not shown in this case that the police jury of St. Landry were under a special obligation to keep the bridge over the Teche always in repair, we think there was no error in the judgment rejecting the plaintiff's demand. Upon this subject see, also, Moore v. Mayor of Shreveport, 3 La. Ann. 645. The question of the liability of municipal corporations for the injurious acts of their agents, done in the proper scope of their employment, is quite different. See Houston v. Police Jury of St. Martin, 3 La. Ann. 566; Walling v. Mayor, etc., 5 La. Ann. 660 [52 Am. Dec. 608]."

The demand of the plaintiff was rejected. King v. Police Jury, 12 La. Ann. 858.

In Sherman v. Parish of Vermillion, 51 La. Ann. 880, 25 South. 538, it was held that parishes were not responsible for the damages caused by the negligence of police juries in matters in which they have discretion, the reason being given that they represent the state, and not the taxpayers, by whom the damages, if allowed, would have to be paid.

And in the case of Bankins v. Police Jury of Calcasieu Parish, 116 La. 639, 40 South. 925, the court say, with reference to the King and Sherman Cases:

"The two cases above cited are in accord with the great weight of authority in other jurisdictions to the effect that 'counties, being subdivisions of the state and instrumentalities of government exercising authority given by the state, are no more liable for the acts or omissions of their officers than the state itself.'

"Some courts hold that counties are liable under the common law, where they are charged with a specific duty, and provided with the means of enforcing it, for a negligent breach of duty, 'but the very decided weight of authority is that there is no liability unless it is created by statute.' Elliott, Roads and Streets (2d Ed.) § 53.

"But the statutes of Louisiana impose no specific duties on police juries relative to public roads and bridges, but leave the whole matter to their untrammeled discretion. * * *

"We find no difficulty in reaching the conclusion that the petition discloses no cause of action against the parish, which is sued through the police jury."

The exception of no cause of action filed by the police jury in this case was properly sustained by the district judge.

[2] Coming now to a consideration of the

exceptions filed on behalf of the town of Thibodaux, we find that the Legislature in Act No. 67, 1855, p. 61, gave to the police jury of Lafourche, and to the mayor and corporation of the town of Thibodaux, authority to construct, or cause to be constructed, a bridge across Bayou Lafourche. We have already seen that the parish and town authorities availed themselves of this privilege, and caused a bridge to be constructed, which subsequently became the property of the parish and the town. But this was a special or private act, entitled "An act to authorize the construction of a drawbridge across the Bayou Lafourche," and it is not alleged by plaintiffs in their petition that such an act was passed or that such authority was given to the parish of Lafourche and to the town of Thibodaux. In the absence of such an allegation, we cannot take cognizance of said act for the purposes of this case; and the general law being that parishes have the exclusive right to build bridges, particularly over navigable streams, we cannot hold that it was the duty or the privilege of the town to build, or cause to be built, the bridge in question, and to keep the same in good order and condition.

[3] The several charters of the town of Thibodaux failed to authorize the town authorities to build bridges, and it was a necessary averment on the part of plaintiffs to allege that the town of Thibodaux had been authorized to build the bridge across Bayou Lafourche. But, on the contrary, plaintiffs allege "that the said town of Thibodaux, through its mayor and board of aldermen, and the said parish of Lafourche, through its police jury, carried on the said bridge as a toll bridge for profit and remuneration, and over and above the usual and customary duties imposed upon them by the laws of their creation and charter." The town in operating the toll bridge was "acting over and above the usual and customary duties

imposed upon it by the laws of its creation and charter." Plaintiffs' petition discloses no cause of action against the town for failure to have maintained the bridge in good order.

In a similar case (Hoggard v. Mayor, etc., of Monroe, 51 La. Ann. 683, 25 South. 349, 44 L. R. A. 477), where plaintiff and his wife sued the city of Monroe for damages for the death of their minor son, who, it was alleged, was drowned from a ferryboat through the negligence and misconduct of defendant's servants and employés in charge of the boat, an exception of no cause of action was filed and sustained, and on appeal the judgment was affirmed. In that case the court say:

"They nowhere allege that this (maintaining and conducting a public ferry across the Ouachita river) was done under the authority of general law, of statutes conferring power to that effect upon municipal corporations generally, or of a special provision in its charter. The circumstance that municipal corporations may be situated upon the banks of navigable streams does not carry with it an inherent or apparently granted power to operate a ferry across the stream. Millsaps v. Mayor, etc., 37 La. Ann. 641. If it did, it would be proper for us to take judicial notice of the fact. We know of no statute conferring generally a power of that kind upon towns so situated. * * * There being no general, inherent, or implied authority, or general statute vesting authority in municipal corporations, to establish and operate public ferries, the right to do so must rest in particular cases upon special authority, and the existence of that authority should be specially pleaded. * * * It may be true that one (a ferry) was conducted under the authority of the common council in the name of the city; but unless the corporation itself was authorized to establish the ferry it cannot be said that the act of the council was the act of the city. The council represents the city only in respect to matters which fall within the corporate powers of the corporation. Beyond this, its acts are ultra vires."

And a judgment maintaining an exception of no cause of action was affirmed.

In the case of Stewart v. New Orleans, 9

La. Ann. 461, 61 Am. Dec. 218, where the city was sued for misfeasance of its police, who, in the exercise of their power, had used an undue degree of violence, the court say, in part, of the judgment of the trial court against the city:

"The judgment we think erroneous; and the error results from a failure in the application of the principle to make the proper distinction between the liabilities of municipal corporations for acts of its officers, in the exercise of powers which it possesses for public purposes, and which it holds as part of the government of the country, and those which are conferred upon it for private purposes.

"Within the sphere of the former, it enjoys the exemption of government from responsibility for its own acts and the acts of its officers deriving their authority from the sovereign power. * * *

"In the case of Baily v. The Mayor of New York [3 Hill (N. Y.) 531, 38 Am. Rep. 669], Nelson, C. J., in treating of the difference between the powers conferred on municipal corporations in their public character for public purposes and those conferred on the same corporation for private advantage, with the view of distinguishing one class from the other, says: 'To this end regard should be had, not so much to the nature and character of the various powers conferred, as the object and purpose of the Legislature in conferring them. If granted for public purposes exclusively, they belong to the corporate body in its public or municipal character. But if for the purposes of private advantage, though the public may derive a common benefit therefrom, the corporation, quo ad hoc, is to be regarded as a private company.' * * *

"Under these sanctions, watchmen are appointed as a necessary branch of the police of the city. Their duties are the preservation of public order and tranquility, and the city in appointing them exercised a governmental function conferred upon it, in its public or municipal character, for public purposes, exclusively, and is not therefore liable for the acts of its officers."

And there was judgment in favor of the defendant city.

This reference to the distinction between acts of a public character and those of a private character in the foregoing decision was recognized and affirmed in the case of the City of New Orleans v. Kerr and Gally, 50 La. Ann. 413, 23 South. 384, 60 Am. St. Rep. 442. In that case the item of damages claimed by the defendant for an illegal arrest and imprisonment by the police was denied by the court.

In the present case plaintiffs do not allege that there is any remedy given by the Legislature for damages alleged to have been inflicted by the town by failure to keep the bridge across Bayou Lafourche in good order and repair, and there was no such remedy, so far as the petition in this case informs us. On the contrary, plaintiffs allege that what was being done by the town authorities was over and above the usual and customary duties imposed upon the town by the law of their creation and charter. And plaintiffs were correct in this regard, for the several charters of the town of Thibodaux failed to give it any authority to build a bridge across Bayou Lafourche. The private act which gave such authority to the town and parish was not alleged or referred to in any way, and it cannot be noticed by the court.

[4] And reference to that act of 1855 shows that it did not make it the duty of the town to establish a bridge or to cause a bridge to be established. It was a matter left by the Legislature to the discretion of the police jury and the town. The grant of authority to these two subdivisions of the state was to perform a public work outside of the limits of the town, for the use of the public at large, and it was a public work which belonged to the state itself to perform; and these subdivisions of the state, or instrumentalities of government in the exercise of authority given by the state, are no more liable for the acts or omissions of their officers than the state itself.

And if we could consider the act of 1855 it does not require the town to keep the bridge in repair. This was left to the dis-

cretion of the police jury and the town. As the statute does not give a remedy for an injury caused by the defective bridge, either expressly or impliedly, against the town, the demand of plaintiffs must be rejected. The judgment sustaining the exception of no cause of action as to the town was correct.

The judgment appealed from is affirmed.

O'NIELL, J., concurs in the decree.