No. ——
First Circuit Appeal

---

S. F. ROGERS v. POLICE JURY OF EAST BATON ROUGE

---

(February 18, 1925, Opinion and Decree)

---

(*Syllabus by the Editor.*)

1. **Louisiana Digest—Parishes—Par. 47, 50.** Police juries are state agencies and part of the state sovereignty, and ordinarily are not liable for damages of any kind except where such liability is expressly sanctioned by positive statute.

2. **Louisiana Digest—Parishes—Par. 47, 50.** Where cattle are dipped under the supervision of the owner and not under that of any authorized agent, employee or representative of the Live Stock Sanitary Board, the owner cannot recover damages for loss of or injury to cattle from the police jury under Act No. 56 of 1918, page 85.

(Civil Code, Art. 2315. Editor's note.)

Appeal from the Parish of East Baton Rouge, Hon. W. Carruth Jones, Judge.

This is a suit to recover damages for loss of and injury to cattle due to dipping in vats.

There was judgment for defendant and plaintiff appealed.

Judgment affirmed.

H. K. Strickland, of Baton Rouge, attorney for plaintiff, appellant.

J. Fred Odom, of Baton Rouge, attorney for defendant, appellee.

LECHE, J. During the high water of 1922, when it was feared that the levees on the west bank of the Mississippi river, opposite Baton Rouge, might give away, owners of live stock, thus threatened by the danger of overflow, were permitted by the police jury of East Baton Rouge to cross their cattle at Baton Rouge in order to pasture them on high lands east of the river. This movement of large quantities of cattle was sanctioned by the Louisiana State Live Stock Sanitary Board with the co-operation of the Federal Board of Animal Industry, under certain conditions and regulations designed to prevent the carrying of ticks from the west side to the east side of the river into tick-free territory. Emergency measures were adopted and made known to all cattle owners who had thus to move their cattle.

The plaintiff in the present suit, availing himself of this opportunity, crossed a herd of some 40 head, by ferry from Port Allen to Baton Rouge, with the intention of driving same to a pasture situated some three miles northeast of the city of Baton Rouge. Plaintiff was met at the ferry landing in Baton Rouge by C. D. Warner, an agent of the Federal Burau of Animal Industry, with whom he had a conversation in the presence of Dr. E. B. Shaw, a veterinarian, also connected with the Federal Bureau of Animal Industry. In this conversation plaintiff informed Warner that he had rented the Knox pasture, wherein to put his cattle, and as there was a public dipping vat in or near that pasture, he expressed a desire to have his cattle dipped in the Knox vat, to which request Warner consented. Warner then told plaintiff to get Rouzzan, who was at the North Station vat, where plaintiff would have to pass, to go and notify W. P. Sullivan, an inspector in charge of dipping vats, who was then at the stock yards, to

go and supervise the dipping of plaintiff's cattle.

Plaintiff, with his assistants, left the Baton Rouge ferry landing and drove his cattle under the personal guidance and direction of John Smith, official inspector on behalf of the State Live Stock Sanitary Board, around and out of the city of Baton Rouge. When the herd had reached the outer limits of the city, Smith then asked plaintiff to let him see his written permit for the removal of his cattle. Plaintiff became angry and refused to show his permit to Smith, although he had such permit in his pocket. As a result of his ill-humor plaintiff failed to see Rouzzan and to get Sullivan to come and superintend the dipping of his cattle. He drove the herd to his home place, where he had another herd of 67 head of cattle, took dinner and then drove both herds, consisting of 107 head, to the Knox vat, where he himself superintended the dipping of the two herds. Such are the salient facts, as we gather them from the evidence.

Five head of cattle were injured and died and many others, estimated at twenty to forty, were more or less injured and burnt by the vat solution, and he now sues the police jury of East Baton Rouge parish for the damage he has thus suffered.

The District Court refused his demand and he has appealed.

Police juries are state agencies and part of the state sovereignty and ordinarily are not liable for damages of any kind except where such liability is expressly sanctioned by positive statute. King vs. Police Jury, 12 La. Ann. 858; Sherman vs. Vermilion, 51 La. Ann. 880, 25 South. 538; Bankins vs. Police Jury, 116 La. 639, 40 South. 925. But the plaintiff in this case relies upon Act 56, page 85, of 1918. That act in Section 1 provides that an owner shall be entitled to recover from a parish reasonable compensation for any live stock killed or permanently injured in the process of dipping or as a result of such dipping for the eradication of the cattle tick, "where such dipping was done under the supervision of the Live Stock Sanitary Board or its agents, employees or representatives, or where such dipping is done under the supervision and direction of inspectors employed or appointed by the police juries, etc."

It appears to us from the undisputed fact that plaintiff dipped his cattle under his own supervision and direction and not under the supervision and direction of any authorized agent, employee or representative of the Live Stock Sanitary Board or authorized inspector of the police jury, that he has therefore failed to show liability on the part of the police jury under the plain terms of the statute upon which he relies for recovery.

Much testimony was adduced as to the cause of the injury to the cattle and that cause is more or less uncertain. It is shown that the solution in the vat was as weak in arsenic as consistent with efficacy, and it is highly probable that other conditions contributed largely, if not entirely, to the injury. It would be of little use to discuss the evidence in that regard, for it could not avail the plaintiff even if the solution was shown to have been too strong, as the absence of supervision and direction by the proper legal authority is fatal to his right to recover.

We believe the conclusions reached by our learned brother of the District Court are sustained by the law and the evidence and his judgment is therefore affirmed.