No. 3174

Second Circuit

## DEMOSS v. POLICE JURY OF BOSSIER PARISH

(March 14, 1928. Opinion and Decree.)
(May 22, 1928. Rehearing Refused.)
(June 4, 1928. Judgment of Court of Appeal reversed by Supreme Court on a writ of certiorari review.)

Murff and Perkins, of Shreveport, attorneys for plaintiff, appellee.

R. H. Lee, of Shreveport, attorney for defendant, appellant.

ODOM, J. The plaintiff brings this action against the Parish of Bossier for damages to his crops caused by cattle which got into his field after a fence had been torn down in order to widen a public road, it being alleged that the fence was torn down by the road contractors by order of the highway engineer working for and under orders of the Police Jury.

The Police Jury tendered an exception of no cause of action, which was overruled by the lower court. Upon trial, judgment was rendered in favor of plaintiff, and defendant, the Police Jury, has appealed.

### OPINION

In the year 1926 the Police Jury of Bossier Parish let a contract to Burt & Byrd, road contractors, to repair a certain public road, the work, it seems, to be done under the supervision of J. R. Wendt, the highway engineer. It was a local or parish and not a state project.

The public road for some distance runs along the edge of the plantation of Mr. Bolinger. At that place, in order to repair the road and build it up to grade, it was necessary to widen it, and Bolinger, the

owner of the adjacent land, gave the Police Jury permission to use from his land whatever additional right of way was necessary, with the understanding, it seems, that his fence was to be moved back and reset without expense to him.

The fence was moved back and reset by the road contractors at their expense. After the fence was moved back and reset by the contractors, they discovered that in order to get the necessary dirt to raise the dump to the specified height, still more width was necessary, and they so informed Wendt, the engineer. Wendt got permission from Bolinger, the land owner, through an agent, to take more of his land for the road. This necessitated a second removal of the fence. Wendt, the engineer, ordered the contractors to again remove the fence. They did so, but this time failed to reset it. This left the field and the crops therein exposed to depredation by stock.

The Bolinger plantation was leased by him for 1926 to the plaintiff, DeMoss, who had the field adjacent to the road planted to cotton and corn. Cattle got into the field and destroyed plaintiff's crops. He prosecutes this suit against the Police Jury to recover the amount of his loss and damage.

It is alleged and admitted that J. R. Wendt was employed by the Police Jury as highway engineer and that the public road was being repaired by the Police Jury under his supervision and that he ordered the fence removed and in doing so he was acting as an employee and agent of the Police Jury.

But there is no allegation, nor is there any suggestion of proof, that the Police Jury, as a body, by ordinance or otherwise, ordered the removal of the fence; nor is there any allegation or proof that any of the members of that body gave such order.

Conceding that plaintiff's crops were damaged by stock on account of the removal of the fence, in the manner and under the circumstances above set forth, the question which we are called upon to decide is whether the Parish of Bossier is liable for such damage.

Our conclusion is, and we hold, that it is not.

Police Juries are state agencies. They represent the state in purely local matters. They possess no powers and no authority except that which is expressly delegated to them by the state.

Under Section 2743 of the Revised Statutes, as amended by Act No. 202 of 1902, the state delegated to Police Juries the power to make all such rules and regulations as they may deem expedient as to the "making and repairing of roads, bridges," etc. They are not required to make and repair roads but may do so. Their duties in that respect are purely discretionary. When they make or repair public roads, they do so as agents of the state and exercise only governmental functions.

"Except in a few jurisdictions, it is the rule that counties are not subject to liability for torts, in the absence of statutes which either expressly or by implication impose such liability upon them."

15 Corpus Juris, page 568, Section 272.

And the text writer proceeds:

"More strictly speaking, a county, when exercising governmental functions and acting as an agency of the state, is not liable, in the absence of statutes imposing liability, for its failure to perform a duty or for its negligent performance of a duty, not even when the duty is imposed by statute."

In the case of Gaudet vs. Parish of Lafourche, 146 La. 363, 83 So. 653, our Supreme Court quoted approvingly the following from the opinion in the case of Bankins vs. Police Jury of Calcasieu Parish, 116 La. 639, 40 So. 925:

"The two cases above cited (in the Bankins case, to wit: King vs. Police Jury, 12 (La.) Ann. 858, and Sherman vs. Parish of Vermilion, 51 (La.) Ann. 880, 25 South. 538) are in accord with the great weight of authority in other jurisdictions to the effect that 'counties, being subdivisions of the state and instrumentalities of government exercising authority given by the state, are no more liable for the acts or omissions of their officers than the state itself.'

"Some courts hold that counties are liable under the common law, where they are charged with a specific duty, and provided with the means of enforcing it, for a negligent breach of duty, 'but the very decided weight of authority is that there is no liability unless it is created by statute.' Elliott, Roads and Streets (2nd Ed.). Sec. 53."

In the case of Sherman vs. Parish of Vermillion, supra, approved in Gaudet vs. Parish of Lafourche, supra, it was held that parishes are not responsible for damages caused by negligence of Police Juries in matters in which they have discretion, and the reason given was that:

"they represent the state, and not the taxpayers, by whom the damages, if allowed, would have to be paid."

In the case of Fischer Land & Improvement Co. vs. Bordelon, President of Police Jury, 52 La. Ann. 429, 27 So. 59, the Court held, quoting the syllabus:

"A parish is an involuntary corporation vested with a portion of the political powers of the state, and exercises only a quasi. legislative authority. It is not liable in damages for torts or trespass committed upon the property of individual citizens to whom it sustains no private relations. In this respect the parochial differs essentially from the municipal corporation."

In the Fischer case, supra, the Court specifically held that the rights, powers, duties and liabilities of a parish and its governing officers differ materially from those of a city, the parish organization being "created almost exclusively with a view to the policy of the state at large" whereas a municipal corporation is created "mainly for the interest, advantage and convenience of the locality and its people."

Learned counsel for plaintiff, in brief, cite the case of Bright vs. Bell, 113 La. 1078, 37 South. 976, in support of their contention that the parish is liable. That case has no application whatever to the point involved in the case at bar.

In that case neither a municipal nor a parochial corporation was involved. That suit was against the individual members or commissioners of the Metairie Road, authorized under ordinance of the city of New Orleans to "maintain and embellish the roadway and sidewalks of the Metairie Road."

Counsel in their brief cite the case of Houston vs. Police Jury of the Parish of St. Martin, 3 La. Ann. 566, in support of their contention that the Parish of Bossier is liable in the case at bar. There the Court said:

"From the examination of the evidence, we have come to the conclusion that there was neglect on the part of those for whose acts the parish is responsible, and that the parish is bound to repair the damage caused thereby."

That case has not been followed or cited in late decisions, and in so far as it announced the principle, if it in fact did so, that a parochial corporation is liable in damages for the torts or neglect of its officers, the holding has been repeatedly and consistently repudiated.

It is argued on behalf of plaintiff's case that Police Juries, acting for parishes, have no right to take private property for the building of roads, without due process of law, and that is unquestionably true.

Section 3369 of the Revised Statutes provides that roads shall be laid out by a jury of freeholders who shall assess the damages and:

"All damages assessed by the said jury to any individual through whose land the road may run shall be deemed a parish charge, and be paid by the treasurer of said parish."

And, in Section 3370, it is provided that:

"Whenever any individual through whose land a road laid out as aforesaid shall pass may be dissatisfied with the decision of the freeholders laying out the same, either as to the course the same is to take or to the damages to him assessed, he may have an appeal to the District Court for the parish in which the said road lies * * * "

But it must be borne in mind that DeMoss, the plaintiff, does not own the land through which this road passes, and which was taken by the Police Jury, nor did he own the fence which was torn down. The land and the fence were owned by Bolinger, who gave his consent to the taking of the land and the removal of the fence. The Police Jury had full authority to take the land and tear down the fence. That was conferred by the land owner.

Plaintiff's claim against the parish is not for destroying the fence. That did not belong to him. But the burden of plaintiff's complaint is that the parish, through Wendt, its engineer, pulled the fence down and neglected to reset it and thereby exposed his crops on land which he had leased from Bolinger. In substance, he charges the officers or agents of the parish with neglect of duty which resulted in damage to him. He cannot recover, because the parish is not liable for damages resulting from the neglect of its officers.

Counsel urge the point that there is a difference between a case where damages result from an active trespass committed by the officers of a parish and a case where damages result from a mere passive neglect of their duties.

Conceding, for the sake of argument, and without so holding, that there is force in the suggestion, that will not avail plaintiff under the circumstances of this case, because the parish committed no trespass upon the property of plaintiff.

A trespass is a transgression or wrongful act, or the going beyond one's right.

The parish, in this instance, did nothing except what it had a lawful right to do. It tore down a fence, but that was Bolinger's fence and he authorized the parish to tear it down. So the act of the parish was lawful.

DeMoss, the plaintiff, was Bolinger's tenant. The parish was under no obligation to maintain a fence around DeMoss' crops. That duty devolved upon Bolinger, the lessor.

Article 2703 of the Civil Code provides:

"The lessor is not bound to guarantee the lessee against disturbances caused by persons not claiming any right to the premises; but in that case the lessee has a right of action for damages sustained against the person occasioning such disturbance."

This case, however, does not fall under that article, for the reason that the disturbance, if such it may be called, was not caused by "persons not claiming any right to the premises."

The parish not only claimed the right, but in fact had the right to go upon the leased premises and tear down the fence. That right was given by Bolinger, the owner of the land. Plaintiff's crops were not destroyed in the building of the road. The fence was left down, and the cattle destroyed them.

The Parish of Bossier is not liable for the damage which plaintiff claims.

For the reasons assigned, the judgment appealed from is reversed and avoided, and plaintiff's demands are rejected, and his suit dismissed, at his cost in both courts.

## ON SECOND CONSIDERATION

On our first consideration of this case, we sustained the defendant's exception of no cause of action and dismissed plaintiff's suit. The Supreme Court ordered the case up on a writ, (18 So. 700), reversed our judgment, holding that as a matter of law the Police Jury is liable for whatever damage plaintiff may have sustained to his crop on account of the destruction of the fences, and remanded the case to this court in order that we might fix the quantum of damage.

The testimony shows that when the fence around plaintiff's field was pulled down and destroyed by the Police Jury, cattle depredated upon plaintiff's crops and destroyed 7,000 pounds of cotton in the field and 180 bushels of corn. It is shown that 7,000 pounds of seed cotton would yield 2,333 pounds of lint, and 4,666 pounds of seed. The Court found that the lint cotton was worth fifteen cents per pound and that the seed were worth $30.00 per ton. The cotton and the seed were, therefore, worth $417.00. But, from this amount should be deducted a reasonable amount for the picking thereof, or $1.00 per hundred pounds for the seed cotton, amounting to $70.00, leaving a net value for the cotton of $347.00. To this, should be added $180.00, value of the corn destroyed, making a total loss for the crop of $527.00. This does not take into consideration the claim which the plaintiff made for expense in guarding the crop. We are not informed whether the Judge in the lower court took that item of expense into consideration in fixing the amount due plaintiff. Our conclusion is that whereas plaintiff no doubt expended some amount for guarding the crop, yet he did not make it plain as to the exact sum. The District Judge rendered a judgment in favor of plaintiff for $530.00. That is only $3.00 more than we figure the damage to the crop, but we shall not amend his judgment to correct that slight error.

Counsel for the Police Jury argues that the plaintiff was not the owner of an entire interest in the crops destroyed, the same having been produced by tenants. The testimony shows that the tenants were "croppers" or "half hands." The whole of the crop belonged to DeMoss at the time it was destroyed, because no division of it had been made. (See Holmes vs. Payne, Sheriff, et al., 4 La. App. 345, and authorities there cited.)

It is therefore ordered, adjudged and decreed that the judgment appealed from be affirmed, with all costs.